Jon M. Sands
Federal Public Defender
District of Arizona
Dale A. Baich (OH Bar No. 0025070)
Robin C. Konrad (AL Bar No. N76K-2194)
Assistant Federal Public Defenders
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
dale_baich@fd.org
robin_konrad@fd.org
602.382.2816
602.889.3960 facsimile

Counsel for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Rudolph Wood III, et. al.,<br>Plaintiff,<br><br>v.<br><br>Charles L. Ryan, et. al,<br>Defendants. | Case No: 2:14-cv-01447-NVM-JFM<br><br>Plaintiff Joseph Rudolph Wood III's Motion for Preliminary Injunction or Temporary Restraining Order<br><br>**Execution Scheduled for July 23, 2014** |

Plaintiff Joseph Rudolph Wood III, having filed his Complaint in the above-captioned case, moves pursuant to Federal Rule of Civil Procedure 65(a) for a preliminary injunction barring Defendants from executing him on July 23, 2014, without timely and meaningful disclosure about the drugs and personnel Defendants intend to use in his execution; without timely and meaningful information about the development of Defendants' lethal-injection drug protocol; and without proper adjudication of Claim Two (violation of First Amendment right of access to execution-related governmental information). Specifically, Mr. Wood asks for the source(s), manufacturer(s), National Drug Codes (NDCs), and lot numbers of the drugs Defendants intend to use in his execution; non-personally-identifying information detailing the medical, professional,

and controlled-substances qualifications and certifications of the personnel Defendants intend to use in his execution; and information and documents detailing the manner in which Defendants developed their lethal-injection drug protocol.

Mr. Wood seeks injunctive relief barring Defendants and each of them or their agents from jointly or severally acting to execute Mr. Wood in a manner that will violate his First and Fourteenth Amendment rights under the United States Constitution and 42 U.S.C. § 1983. In light of his impending execution date, a preliminary injunction is necessary to allow Mr. Wood to litigate his claims before the scheduled execution date. Mr. Wood also requests a hearing on this motion. In the alternative, Mr. Wood seeks a temporary restraining order prohibiting Defendants from administering lethal injection until a preliminary hearing is held. This motion is supported by the following memorandum.

### Memorandum in Support of Motion for Preliminary Injunction or Temporary Restraining Order

Plaintiff Joseph Rudolph Wood III seeks a preliminary injunction barring Defendants from executing him on July 23, 2014. In light of the impending execution date, which is scheduled to occur in 22 days, a preliminary injunction is necessary to allow Mr. Wood to litigate his claims before he is executed in a manner that violates his constitutional rights. The purpose of a preliminary injunction is to preserve the status quo until the rights of the parties can be fully and fairly litigated.[1]

To be entitled to a preliminary injunction, a plaintiff must demonstrate (1) that he will likely succeed on the merits of his claim; (2) that without preliminary relief, he will likely suffer irreparable harm; (3) that "the balance of equities tips in his favor"; and (4) that "an injunction is in the public interest."[2] "'[S]erious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of

---

[1] *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980).

[2] *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."[3] "The elements of the preliminary injunction test must be balanced, so that a stronger showing of one element may offset a weaker showing of another."[4] For the reasons outlined below, Mr. Wood meets the standard for obtaining a preliminary injunction.

## I.    Procedural Background

Mr. Wood is under a warrant of execution and is scheduled to be put to death by lethal injection by the State of Arizona on July 23, 2014.[5] Beginning on April 22, 2014, the day the State moved for a warrant of execution in Mr. Wood's case,[6] Defendants and Mr. Wood exchanged a series of letters involving information and requests for information about the drugs that the Arizona Department of Corrections (ADC) intends to use in his execution; about the qualifications and certifications of personnel who are expected to participate in his execution; and about the manner in which ADC developed its lethal-injection drug protocol.

Defendants' initial letter noted that ADC intends to use midazolam and hydromorphone to execute Mr. Wood in a two-drug protocol.[7] The letter also stated that if "ADC is able to procure pentobarbital, ADC will provide notice of its intent to use that drug . . . ."[8]

Subsequently, counsel for Mr. Wood sent four letters to ADC requesting

---

[3] *Id.* (citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (alteration in original)).

[4] *Lopez*, 680 F.3d at 1072.

[5] Warrant of Execution, *State v. Wood*, No. CR-91-0233-AP (Ariz. Sup. Ct. May 28, 2014).

[6] Mot. For Warrant of Execution, *State v. Wood*, No. CR-91-0233-AP (Ariz. Sup. Ct. April 22, 2014).

[7] Letter from Jeffrey A. Zick, Chief Counsel, Capital Litigation Section of the Office of the Arizona Attorney General, to Julie S. Hall, Esq. (Apr. 22, 2014) ("Zick Letter"), attached as Ex. A.

[8] *Id.*

information about the execution protocol.[9]  In the first letter,[10] counsel asked for information regarding the drugs for the two-drug protocol (midazolam and hydromorphone); for an explanation of ADC's continued search for pentobarbital;[11] for information about federal registrations that authorize ADC staff to handle controlled substances (*i.e.*, staff members' registrations issued by the Drug Enforcement Administration ("DEA"));[12] and for information and documents explaining how ADC devised its lethal-injection drug protocol.

ADC declined to provide further information about the drugs,[13] citing Arizona's executioner-confidentiality statute,[14] which protects the identity of executioners and ancillary persons from public disclosure.  The letter merely asserted that ADC intends to use drugs that are "domestically obtained," and "FDA approved."[15]  In addition, the letter mentioned ADC's protocol provisions relating to qualifications relating solely to

---

[9] *See* Letter from Dale A. Baich, Supervisor, Capital Habeas Unit of the Office of the Federal Public Defender for the District of Arizona, to Charles L. Ryan, Director, Arizona Department of Corrections (Apr. 30, 2014) ("Baich April Letter"), attached as Ex. B; Letter from Dale A. Baich, Supervisor, Capital Habeas Unit of the Office of the Federal Public Defender for the District of Arizona, to Charles L. Ryan, Director, Arizona Department of Corrections (May 9, 2014) ("Baich May Letter"), attached as Ex. C; Letter from Dale A. Baich, Supervisor, Capital Habeas Unit of the Office of the Federal Public Defender for the District of Arizona, to Charles L. Ryan, Director, Arizona Department of Corrections (May 15, 2014) ("Baich Litigation Hold Letter"), attached as Ex. D; Letter from Dale A. Baich, Supervisor, Capital Habeas Unit of the Office of the Federal Public Defender for the District of Arizona, to Charles L. Ryan, Director, Arizona Department of Corrections (May 15, 2014) ("Baich May Follow-Up Letter"), attached as Ex. E.

[10] Baich April Letter.

[11] *Id.* at 3.

[12] *Id.* at 3-4.

[13] Letter from Charles L. Ryan, Director, Arizona Department of Corrections, to Dale A. Baich, Supervisor, Capital Habeas Unit of the Office of the Federal Public Defender for the District of Arizona (May 6, 2014) ("Ryan May Letter"), attached as Ex. F.

[14] *Id.* (citing Ariz. Rev. Stat. § 13-757(C) (2013) (identity of executioners or those persons who "participate or perform ancillary functions" in execution shall be kept confidential)).

[15] Ryan May Letter.

persons who set intravenous lines during the execution.[16]  ADC did not provide information responsive to counsel's request.  The letter also noted that ADC would continue to look for a source of pentobarbital indefinitely, and it indicated that ADC would notify counsel should ADC succeed in finding a source.[17]  With respect to counsel's request for information and documents explaining ADC's development of its drug protocol, the letter explained that ADC relied on "declarations and sworn testimony" provided in litigation in an Ohio lethal-injection case.  The letter did not indicate which declarations or testimony ADC used, nor did it explain how ADC relied on those documents.

Counsel sent a follow-up letter on May 9,[18] as well as an additional follow-up letter[19] and a litigation-hold letter on May 15,[20] to reiterate and expand his request for information and documents.

ADC did not respond to the follow-up letters until June 6, 2014.[21]  In that response, ADC asserted that it was treating counsel's request as a public-records request, and that it was providing some documents that were redacted "pursuant to A.R.S. § 13-757(C)."[22]  The documents include purchase orders, invoices, and order confirmations for the drugs,[23] with redactions of almost all information except drug names, expiration dates, and invoice dates.[24]  The letter also included several emails exchanges between

---

[16] *Id.*

[17] *Id.*

[18] Baich May Letter.

[19] Baich May Follow-Up Letter.

[20] Baich Litigation Hold Letter.

[21] Letter from Charles L. Ryan, Director, Arizona Department of Corrections, to Dale A. Baich, Supervisor, Capital Habeas Unit of the Office of the Federal Public Defender for the District of Arizona (June 6, 2014) ("Ryan June Letter"), attached as Ex. G.

[22] *Id.* at 3-44.

[23] *Id.* at 3-20.

[24] Redacted Information includes, *inter alia*, purchase order numbers, vendor names and

Defendant Ryan and officials from the Oklahoma Department of Corrections.[25]  ADC provided no specifics about the qualifications or certifications of ADC staff, and the letter referred counsel to documents "in the public record" for explanation of ADC's two-drug protocol.[26]

## II.    Historical Background on ADC's Lethal-Injection Drugs

ADC has the sole authority for developing the lethal-injection protocol to be used in executing Arizona's condemned prisoners, and for carrying out that task.[27]  The statute that grants ADC this sole authority also protects the identity of "executioners and other persons who participate or perform ancillary functions in an execution" from public disclosure (the "executioner-confidentiality" statute).[28]

Under its statutory authority, ADC devised a lethal-injection drug protocol sometime in 1993, which ADC has changed on an *ad hoc* basis multiple times since then.  ADC made some changes in response to lawsuits brought by death-row prisoners who raised concerns about the constitutionality of ADC's protocol.  Other changes— both written and last-minute, unwritten changes—were made because ADC was unable to get legal or unexpired doses of the drugs listed in the protocol.

> **A.    ADC's refusal to provide documentation about the source of its lethal-injection drug, and the Drug Enforcement Administration's subsequent determination of ADC's violation of the federal Controlled Substances Act**

In the autumn of 2010, ADC developed substantial difficulties acquiring its lethal-injection drugs.  These problems first came to light in September 2010, when a condemned Arizona prisoner asked ADC to provide him with information about the sodium thiopental ADC intended to use in his executions.  Because no legitimate

---

identifying information, manufacturer names and identifying information, item numbers, and National Drug Codes.

[25] *Id.* at 21-24, 31-34.

[26] *Id.*

[27] Ariz. Rev. Stat. § 13-757(A).

[28] *Id.* § 13-757(C).

domestic source of sodium thiopental existed at the time, he believed that ADC intended to important sodium thiopental from a foreign source.[29] He therefore explained that any imported drug was likely illegal, and that if ADC used a grey- or black-market drug, ADC ran significant risks that the drug would not work properly and that his execution with such a drug could therefore result in an execution that violated, *inter alia*, the Eighth Amendment.

In response to the prisoner's request, Defendants refused to provide the information, and instead cited Arizona's executioner-confidentiality statute as a basis for refusing to provide the information. Defendants continued to make that assertion in response to subsequent requests made by other condemned prisoners, and repeatedly avowed that ADC had obtained the sodium thiopental lawfully.

On May 24, 2011, however (which was one day before the scheduled execution of Donald Beaty), the Drug Enforcement Administration (DEA) informed Defendants that—as death-row prisoners had warned—ADC had obtained its supply of sodium thiopental in violation of the CSA.[30] ADC then gave the Arizona Supreme Court

---

[29] Several months later, owing to requests made under the federal Freedom of Information Act, and under Arizona's public-records statute, other death-row prisoners obtained detailed information about ADC's imported supply of sodium thiopental (and other lethal-injection drugs not relevant here).

[30]Although condemned prisoners pointed out to Director Ryan and to state and federal courts that the importation of the drugs likely violated various federal laws, ADC repeatedly avowed that it had complied with all laws when it acquired the drugs. *See, e.g.*, Aff. of Charles L. Ryan, attached to State's Resp. to Mot. for Order Directing the State to Provide Information and to Abide by its Current Written Lethal Injection Protocol and Mem. in Support, *State v. Landrigan*, No. CR-90-0323-AP (Ariz. Sup. Ct.), filed Oct. 8, 2010, attached as Ex. K; Aff. of Charles L. Ryan, Attach. A to State's Resp. to Supplemental Mem. on Mot. for Issuance of a Warrant of Execution, *State v. Cook*, No. CR-88-0301-AP (Ariz. Sup. Ct. filed Dec. 28, 2010), attached as Ex. H.

Moreover, ADC had problems complying with its own protocol requirements related to drug acquisition. *Towery v. Brewer*, 672 F.3d 650, 652-53 (9th Cir. 2012) (noting that the State changed its protocol hours before an oral argument in the court, and just two days before a scheduled execution, because ADC "discovered at the last minute that the originally planned drugs had expired in January 2012. How such a discovery escaped the State for the past six weeks is beyond us, and gives us pause as to the regularity and reliability of Arizona's protocols.").

The lethal-injection protocol, which ADC itself developed, requires ADC to "[e]nsure that complete sets of chemicals are on site and immediately available for use[]" as soon as ADC receives a warrant of execution. ADC Dep't Order 710, Execution Procedures, at Attach. D, § A(I)(III), attached as Ex. I.

eighteen hours' notice that Defendants would execute Mr. Beaty with Nembutal,® the brand name and only FDA-approved version of pentobarbital. That drug was not listed in ADC's written protocol. The following month, after Mr. Beaty's execution with the new, unlisted drug, ADC changed its protocol to include pentobarbital in its list of accepted drugs.

### B. ADC's release of drug-specific information

In July 2011, several death-row prisoners sued ADC, raising issues related to, *inter alia*, ADC's procurement of sodium thiopental. In the course of discovery in that matter, ADC turned over extensive information about its supply of Nembutal,® including photographs of the actual bottles of the drugs, and photographs of the box labels containing the lot numbers and expiration dates of the drug.[31]

Subsequently, in October 2013, Edward Schad and Robert Jones (two death-row prisoners who were scheduled to be executed that month) asked ADC to provide them with information about the drugs ADC intended to use in their executions. ADC refused, claiming that the information, including the same type of information Defendants provided in 2011, was protected under Arizona's executioner-confidentiality statute.

Mr. Schad and Mr. Jones then filed a civil-rights complaint and a related motion for preliminary injunction,[32] in which they alleged violations of their First Amendment right of access of government information related to executions—just as Mr. Wood has done here. This Court granted the motion for preliminary injunction and ordered ADC to divulge the manufacturer, National Drug Codes, lot numbers, and expiration dates for

_____

The drug importation also violated the federal Food, Drug, and Cosmetics Act. *Cook v. FDA*, 733 F.3d 1, 12 (D.C. Cir. 2013).

[31] *See* Defs' Disclosures, Bates No. 01985 DFS' 26(a)(1) Disclosures and Responses to RFPs, (Nembutal® Purchase Order); Defs' Disclosures, Bates No. 01973-01978 DFS' 26(a)(1) Disclosures and Responses to RFP's, (Photographs of Nembutal Supply), *West v. Brewer*, No. 2:1 l-cv-01409-NVW (D. Ariz. Aug. 19, 2011), attached as Ex. J.

[32] Pls.' Mot. Prelim. Inj., *Schad v. Brewer*, No. 2:13-cv-02001-ROS (D. Ariz. filed October 3, 2013), ECF No. 11.

the lethal-injection drug.[33]  In so doing, the Court noted that executions have historically been open to the public, and that ADC had previously released this type of information.[34]  The Court also ruled that prisoners have a First Amendment right of access to government information related to their executions.[35]  ADC did not appeal the Court's order; instead ADC released the information in a publically filed document.

**III.    Argument**

      **A.    This Court should grant Mr. Wood a preliminary injunction, or in the alternative, a temporary restraining order, until the Court can hold a preliminary hearing.**

Mr. Wood asks this Court to issue a preliminary injunction on the basis of his likelihood of success on at least Claim Two (violation of First Amendment right of access to execution-related governmental information) of the complaint.[36]  Under the First Amendment, Mr. Wood is entitled to the information that the State refuses to provide to him.[37]  As the Ninth Circuit has explained, "[a]n informed public debate is critical in determining whether execution by lethal injection comports with 'the evolving standards of decency which mark the progress of a maturing society.'"[38]  Moreover, "the

---

[33] Order granting Prelim. Inj., *Schad v. Brewer*, No. 2:13-cv-13-02001-ROS, at 2 (D. Ariz. Oct. 4, 2013) ("*Schad* Oct. 4 Order").

[34] *Id.*

[35] *Id.*

[36] *See Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 983 (D. Ariz. 2006) (noting that the court need not address each and every claim in determining plaintiff's likelihood of success on the merits, when the court has found at least one claim is likely to succeed).

[37] *Cal. First Amendment Coal. v. Woodford*, 299 F.3d 868, 873 (9th Cir. 2002) (recognizing that the public has a "right to be informed about how the State and its justice system implement the most serious punishment a state can exact from a criminal defendant—the penalty of death"); *see also Schad* Oct. 4 Order; [Expanded] Order granting preliminary injunction, *Schad v. Brewer*, Case 2:13-cv-02001-ROS (D. Ariz. filed Oct. 7, 2013) ("*Schad* Oct. 7 Order").

[38] *Cal. First Amendment Coal.*, 299 F.3d at 876 (citing *Trop v. Dulles,* 356 U.S. 86, 101 (1958)).

censorial power is in the people over the Government, and not in the Government over the people."[39]

Defendants' actions violate not only Mr. Wood's First Amendment rights as a citizen, but also his due-process rights as a death-sentenced individual who is being denied access to information that is necessary to determine whether his execution will likely violate the Constitution. More specifically, Mr. Wood's right to this information is especially critical in light of ADC's difficulties in lawfully obtaining lethal-injection drugs. Consequently, issuance of a preliminary injunction, or in the alternative, a temporary restraining order, is necessary to ensure that Mr. Wood's rights are not violated before he is executed.

**1. Mr. Wood can demonstrate a likelihood of success on Claim Two: By deliberately concealing necessary information from Mr. Wood, Defendants have violated his First Amendment right to be informed about the manner in which the State implements the most serious penalty available in the criminal-justice system (Compl. at ¶¶ 150-153).**

Mr. Wood has a strong likelihood of success on the merits of his claim that Defendants' decision to hide governmental information related to an execution violates his First Amendment right of access to governmental information about the execution process.[40] As this Court has stated, "[a] prisoner 'retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'"[41] Indeed, the Court previously ordered Defendants to provide condemned prisoners with the same type of information related to

---

[39] *New York Times Co. v. Sullivan*, 376 U.S. 254, 275, (1964) (quoting 4 Annals of Congress, p. 934 (1794)).

[40] *Cal. First Amendment Coal.*, 299 F.3d at 877 ("Under the public right of access cases, once the right of access attaches to a governmental proceeding, that right 'may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'") (quoting *Press–Enter. Co. v. Super. Ct.*, 478 U.S. 1, 9 (1986)).

[41] *Schad* Oct. 7 Order (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

the lethal-injection drugs that Mr. Wood now requests.[42]  Accordingly, Mr. Wood has demonstrated a likelihood of success on his claim.

Mr. Wood is an "individual citizen" with a First Amendment right of access to governmental proceedings; he is also a prisoner who retains his First Amendment rights absent deprivation procedures that meet due-process requirements.[43]  No such procedures have occurred in this case.[44]  Instead, Defendants simply assert that the information Mr. Wood requested is "confidential" pursuant to Arizona's public-records statute.  This argument, however, has been rejected by this Court.[45]

As an individual citizen, Mr. Wood has the right to "'effectively participate in and contribute to our republican system of self-government.'"[46]  The First Amendment right of access to governmental proceedings extends to the execution context—that is, there exists the right of access to information "about how the State and its justice system implement the most serious punishment a state can exact from a criminal defendant—the penalty of death."[47]  Mr. Wood asks for precisely this type of non-confidential information about governmental proceedings: he asks Defendants to provide him with information about the lethal drugs the State intends to use in executions.  Moreover, Mr. Wood asked for the *identical type* of information that ADC has provided in the past in

[42] *Schad* Oct. 4 Order. In that case, the Court denied the prisoners' request for certain information about the qualifications of the execution team, noting that Defendants had legitimate penological interests in not revealing information that might identify the execution team.  *Id.*  Here, however, Mr. Wood has specifically asked for *non-identifying* information that demonstrates ADC staff members' medical and DEA qualifications and certifications.

[43] *Pell*, 417 U.S. at 422.

[44] *Schad* Oct. 7 Order at 6 n.1 ("Defendants do not argue that legitimate penological interests preclude prisoners—as opposed to the public in general—from exercising any putative First Amendment right to access information about their executions.").

[45] *Schad* Oct. 7 Order at 9 ("[T]he Court already rejected this argument in *Landrigan v. Brewer*. . . .") (citation omitted).

[46] *Cal. First Amendment Coal.*, 299 F.3d at 874, (quoting *Globe Newspaper v. Super. Ct.*, 457 U.S. 596, 604-05 (1982)).

[47] *Id.*; *see also id.* at 875 (noting that "the public has a First Amendment right of access to governmental proceedings in general and executions in California in particular . . .").

response to public-records proceedings, in response to discovery requests by other death-row prisoners, and in response to an order of this Court—with which Defendants complied without seeking a protective order.

But instead of providing the information to Mr. Wood, Defendants claim that the information is exempt from public disclosure by a statute that protects the identity of persons involved in executions. Although Defendants' secrecy is not supportable under the First Amendment,[48] it is even less supportable here—not only because ADC has provided this type of information in the past without any claim of protection, but also given Defendants' history of incorrectly avowing that their previous acquisition of lethal drugs was lawful and appropriate.

Moreover, this Court has already found that Arizona's executioner-confidentiality statute does not protect disclosure of the type that Mr. Wood requests. As this Court has explained, "if the pentobarbital manufacturer were among those 'persons' who perform ancillary functions, it is difficult to imagine any information that could be disclosed under the statute, which, as explained above, *is wholly inconsistent with the First Amendment guarantee of access* to the procedures by which inmates are executed."[49]

Accordingly, Mr. Wood has shown a likelihood of success on the merits of Claim Two that Defendants violated the First Amendment's guarantee of the right of access to execution-related governmental proceedings.

### 2.    Mr. Wood is likely to suffer irreparable harm

As a matter of law, Mr. Wood will suffer irreparable harm if a preliminary injunction is not granted, as that would cause him to be executed in violation of his constitutional rights.[50]   As described above, Mr. Wood has alleged at least one

---

[48] *See Press-Enter.*, 478 U.S. at 7 ("'People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.'") (*quoting Richmond Newspapers Inc. v. Virginia*, 448 U.S. 555, 575 (1980)).

[49] *Schad* Oct. 7 Order at 9-10 (emphasis added).

[50] *See Towery v. Brewer*, 672 F.3d 650, 661 (9th Cir. 2012), (recognizing that irreparable harm is demonstrated by prisoners bringing § 1983 lawsuit involving upcoming

potentially meritorious claim of threatened constitutional violations of his First and Fourteenth Amendment rights under the United States Constitution. The Ninth Circuit has made clear that "[a]n alleged constitutional infringement will often alone constitute irreparable harm."[51] And as this Court has explained, "'[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably causes irreparable injury."[52]

Mr. Wood will also suffer irreparable harm as a matter of fact. Mr. Wood is scheduled to be executed July 23, 2014. If he is executed without intervention of this Court, he will be deprived of his First Amendment right to be informed about how the State intends to execute him, and of his right to due process and access to the courts. No remedy will be available to Mr. Wood once he is dead.

Finally, Mr. Wood does not seek damages; no monetary remedy could compensate him once he is executed in violation of the Constitution.[53] There is nothing more final and irreversible than death. "The penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability."[54] Therefore, if Mr. Wood is unconstitutionally executed, he will have no recourse for those violations. This factor weighs in favor of an injunction.

### 3.    The balance of equities favor Mr. Wood

The balance of equities tips in Mr. Wood's favor. This Court should keep in mind that Mr. Wood is not seeking an injunction to forever prevent the State from carrying out his sentence. Rather, he seeks only to enjoin Defendants from executing

execution).

[51] *Goldie's Bookstore Inc. v. Super. Ct. of Calif.*, 739 F.2d 466, 472 (9th Cir. 1984); *see also, e.g.*, *Warsoldier v. Woodford*, 418 F.3d 989, 1001-1002 (9th Cir. 2005) ("'When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary'") (*citing* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)).

[52] *Schad* Oct. 7 Order at 14 (citing *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2013)) (first alteration added).

[53] *See Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (constitutional violations cannot be remedied through damages).

[54] *Furman v. Georgia*, 408 U.S. 238, 306 (1972) (Stewart, J. concurring).

him in an unconstitutional manner.  And as this Court found in *Schad*, "Defendants have failed to persuade the Court that disclosure of the manufacturer of the lethal-injection drugs will cause significant harm to the Defendants.  Accordingly, the balance of equities tips in [the condemned prisoners'] favor[,]"[55] and this Court should not permit Defendants to execute to Mr. Wood before it has the opportunity to review his claims.

### 4.    Granting the injunction would serve the public interest

Preliminary relief would serve the public interest because "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated."[56]  The "public interest is served only by enforcing constitutional rights and by the prompt and accurate resolution of disputes concerning those constitutional rights."[57]  Indeed, "the public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional right."[58]  As the Ninth Circuit has recognized, "Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles."[59]  Moreover, there is no public interest that would be injured by the granting of preliminary relief.[60]  Finally, this Court found in *Schad* that "the public interest will best be served by granting a preliminary injunction in this case[]" because "there is a substantial public interest in vindicating First Amendment principles."[61]

---

[55] *Schad* Oct. 7 Order at 14.

[56] *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).

[57] *In re Ohio Execution Protocol Litig.*, 840 F.Supp.2d 1044, 1059 (S.D. Ohio 2012) (citation omitted).

[58] *Id.*

[59] *Otter*, 682 F.3d at 826 (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002)).

[60] *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (considering "whether there exists some critical public interest that would be injured by the grant of preliminary relief").

[61] *Schad* Oct. 7 Order at 15 (citing *Sammartano v. First Judicial Dist. Court*, 303 F.3d

**B.    Mr. Wood filed this motion without delay.  He could not have requested preliminary relief before Defendants provided him with definitive, official information.**

Before granting injunctive relief that would prevent an execution from occurring, courts must "consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim."[62]

There has been no such delay here.  Generally, as ADC's lethal-injection protocol indicates,[63] the cause of action addressed in this motion does not become ripe until ADC provides the official notice of the drug protocol that ADC will use in the execution. Nevertheless, in the interests of obtaining information (and potentially litigating relevant issues) as soon as possible, Mr. Wood began asking for this and related information within a few days of the State's request for a warrant of execution.  After the limited response from ADC, Mr. Wood repeated his requests.  Finally, when ADC's letter of June 6, 2014, suggested that further requests for information and clarification would be futile, Mr. Wood and five other plaintiffs filed the Complaint in this matter on June 26, 2014.  Mr. Wood then waited for ADC to provide the required twenty-day notice, in order to have official, and ostensibly final, information about Defendants' plans to execute him.  Counsel for Mr. Wood received that notice on Saturday, June 28, 2014.[64] After reviewing the letter, Mr. Wood filed this motion on the third business day after his counsel received the letter.  In other words, Mr. Wood filed his motion as soon as practicable after he received the limited information and official notice.

---

959, 974 (9th Cir. 2002), *abrogated on other grounds by Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)).

[62] *Nelson v. Campbell*, 541 U.S. 637, 649 (2004).

[63] ADC Dep't Order 710, "Execution Procedures," Attach. D at § C(1) (dated March 26, 2014).

[64] Although twenty days before Mr. Wood's execution is actually July 3, 2014, Mr. Wood assumes that Defendant Ryan's letter of June 28 constitutes ADC's twenty-day notice.  If Defendant Ryan sends another letter on July 3, Mr. Wood will supplement this motion if necessary.

## IV.   Conclusion

For the reasons outlined in this Memorandum, Mr. Wood asks this Court to:

(1)   grant him a preliminary injunction preventing Defendants from carrying out his execution on the scheduled date unless Defendants provide him with
   a.  the information and documents he has requested,
   b.  in a timely manner,
   c.  with timely opportunity for him to be heard;
(2)   grant Mr. Wood oral argument on his request for a preliminary injunction; and
(3)   grant any other relief as this Court deems appropriate.

Respectfully submitted this 2nd day of July, 2014.

Jon M. Sands
Federal Public Defender
District of Arizona
Dale A. Baich
Robin C. Konrad

s/ Dale A. Baich
Counsel for Plaintiff Joseph R. Wood III

16

**Certificate of Service**

I hereby certify that on July 2, 2014 , I electronically filed the foregoing Motion for Preliminary Injunction or Temporary Restraining Order with the Clerk's Office by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


s/ Chelsea Hanson
Legal Assistant
Capital Habeas Unit

17