1

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

Joseph Rudolph Wood III, et )
al.,                        )
                            )  No.  **CV 14-1447-PHX-NVW**
            Plaintiffs,     )
vs.                         )
                            )     **Phoenix, Arizona**
Charles L. Ryan, et al.,    )      **July 23, 2014**
                            )        **3:27 p.m.**
                            )
            Defendants.      )
_____

        BEFORE:  **THE HONORABLE NEIL V. WAKE, JUDGE**

     (*Telephonic Motion for Emergency Stay of Execution*)
                    (*REDACTED*)

Official Court Reporter:
Laurie A. Adams, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 43
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

APPEARANCES

For the Plaintiffs:

      FEDERAL PUBLIC DEFENDER'S OFFICE
      By:  **Robin C. Konrad, Esq.**
      850 W. Adams Street
      Suite 201
      Phoenix, AZ 85007

For the Defendants:

      OFFICE OF THE ATTORNEY GENERAL
      By:  **Jeffrey A. Zick, Esq.**
      1275 W. Washington
      Phoenix, AZ 85007

UNITED STATES DISTRICT COURT

P R O C E E D I N G S

THE COURT:  Ms. Konrad.

MS. KONRAD:  I just filed a Motion for Emergency Stay of Execution.  Mr. Wood's execution started at 1:52.  He was being sedated at 1:57.  Since that time he has been gasping, snorting, and unable to breathe and not dying.  And we're asking -- our motion asks for you to issue an emergency stay and order the Department of Corrections to start lifesaving techniques as required under their protocol.

THE COURT:  Do you have an Assistant Attorney General there?

MS. KONRAD:  I do not.  I'm in the office right now.

THE COURT:  Okay.  I have been pulled out of a meeting.  We will do everything we can to deal with this with the urgency and demands.  And I have a court reporter here.  We are on the record.

I want to make attempt right now to obtain participation of an attorney for the State.  Who would that be?

I mean --

MS. KONRAD:  Jeff Zick.

THE COURT:  Do you have any -- do you have numbers for any of these people?  The reality is we'll take anybody I can reach, but we should start with the most appropriate person.  It seems like Mr. Zick.

MS. KONRAD:  Let me -- just a second, Judge Wake.

15:27:50

15:28:11

15:28:26

15:28:44

15:28:58

THE LAW CLERK:  I have got a number.

THE COURT:  Ms.  Konrad.

THE LAW CLERK:  The work number is 602-542 --

MS. KONRAD  Judge Wake?

THE COURT:  Yes.                                    15:29:28

MS. KONRAD:  542-5025 is the main Number.

THE LAW CLERK:  8594 is his direct number.

THE COURT:  We have 8594 as his direct number.

MS. KONRAD:  Yes.  That is Jeff Zick's direct number.

THE COURT:  Now, I must tell you, I don't know how to    15:29:44
do conference calling on my phone.  Are you able to do it on
your end?

MS. KONRAD:  Yes.  I will attempt to conference him
in.

THE COURT:  What's the best way -- my staff here knows   15:29:53
how to do it.  So why don't we try to do it on my end.

MS. KONRAD:  Okay.

THE COURT:  Go ahead.

MS. KONRAD:  Okay.

THE COURT:  Ms. Konrad, do you have the numbers and      15:30:05
names for any backup people?  Because I probably won't have you
on as I'm reaching them.

MS. KONRAD:  Sure.  A backup number is Jeff Sparks.
Mr. Sparks is also on the case.  Mr. Sparks is 548-7670.

THE COURT:  Now --                                       15:30:24

MS. KONRAD:  Also let me give you the cell phone number for Mr. Zick.

THE COURT:  Yes.

MS. KONRAD:  It's ███████.

THE COURT:  All right.  And in case I lose you, what's the number to call you back?                                      15:30:36

MS. KONRAD:  ████████████.

THE COURT:  All right.  Please hold and we'll try.

MS. KONRAD:  Okay.  Thank you, Judge.

Ms. Konrad, we're going to try another number.        15:31:37

MS. KONRAD:  Okay.  Thank you.

MR. ZICK:  Hello?

THE COURT:  Mr. Zick?

MR. ZICK:  Yes.

THE COURT:  This is Judge Wake calling.               15:32:03

MR. ZICK:  Hi, Judge Wake.

THE COURT:  I need to put you on a conference call with Robin Konrad.

MR. ZICK:  I'm sorry.  Let me step out of my office. I had the director on the line.  I can step out of my office.   15:32:14

THE COURT:  Hold on a minute.

Ms. Konrad, are you there?

MS. KONRAD:  I am.

THE COURT:  I just reached Mr. Zick on his cell phone. He is stepping out because he was speaking to the director at   15:32:24

this moment.  Hold on a minute until I get him back.

MR. ZICK:  I'm here.

THE COURT:  Mr. Zick, Ms. Konrad has advised me that Mr. Wood has not yet expired, and this has been going on for, what, nearly an hour and a half.

And Ms. Konrad, I'm going to ask you to state very succinctly the motion you filed and the relief you are seeking, and then I'm going to invite you, Mr. Zick, to tell us everything that is relevant to this that, of course, I will need to hear from you.

Go ahead, Ms. Konrad.

MS. KONRAD:  According to the attorney who is witnessing, Mr. Wood -- the execution started at 1:52 p.m.  At 1:57 p.m., the Department of Corrections reported that he was sedated but at 2:02 he began to breathe.  At 2:03 his mouth moved, and since that time Mr. Wood has continued to breathe. He has been gasping and snorting for over an hour.  And in our motion, we are respectfully requesting that the Court stop the execution and require the Department of Corrections to use the lifesaving provisions required in its protocol.

THE COURT:  Mr. Zick, I invite you to tell me the facts as you know them.  And that would include the details of what the protocol provides for this situation.

Go ahead, Mr. Zick.

MR. ZICK:  Okay.  What I can tell you that I know from

speaking with Dawn Northup, who is general counsel with the Department of Corrections, and with the director, is that the consciousness check, according to -- that complies with the protocol that had taken place, the individual who does the consciousness check determined, medically determined that Mr. Wood was unconscious; that his mouth was open; that at some point during the -- when the drugs were given, an involuntary reaction or a snoring-type reaction was taking place; that it had been ongoing.  A second consciousness check was given.  He is unconscious --

THE COURT:  Mr. Zick, I appreciate the need to address this as quickly as possible, but could you please give me, to the extent you know, the time frames of these steps that you have articulated, the second consciousness check?

MR. ZICK:  I don't have the exact time frame of the second consciousness check.

THE COURT:  Very well then.  Just please continue with what you know.

MR. ZICK:  Okay.  And so that involuntary reaction, according to the medical individual who was doing the consciousness check, indicated that that was something that is going to occur.  A second dose of drugs was given, and I don't have the time frame for that.  They didn't give me that information.  That involuntary reaction continues, but I am told that Mr. Wood is effectively brain dead and that this is

UNITED STATES DISTRICT COURT

the type of reaction that one gets if they were taken off of life support.  The brain stem is working but there's no brain activity.

THE COURT:  And tell me briefly how it is, is he -- do you have the leads or probes necessary to determine his brain state?

15:35:50

MR. ZICK:  Repeat that, Judge.  I'm sorry.

THE COURT:  Do you have the leads connected to determine his brain state?

MR. ZICK:  That, I don't -- I don't believe there are leads connected on the head, but I'm not sure.  I know that this individual is medically trained.

15:36:03

THE COURT:  Okay.  What I'm wondering is what the basis is for the conclusion that he is effectively brain dead.

MR. ZICK:  It's because of the medical training.  And all I know is that's the information that was given to me.  I could certainly find that out.

15:36:17

THE COURT:  Well, if there are not monitors connected with him, if it's just a visual observation, that is very concerning as not being adequate.

15:36:34

Tell me, what is the current status and what is the anticipated plan of action from this minute forward?

MR. ZICK:  Well, from this minute forward, I can tell you that the director is on the phone with the governor's office.  The only contingency plan for this is in the protocol.

15:36:55

I think it's cited in the motion that was filed.

THE COURT:  I have not been able to read the motion because I have just called you immediately.  So please tell me what the protocol provides in that respect.

MR. ZICK:  If I could step back into my office.

THE COURT:  Certainly.

MS. KONRAD:  I can read you the motion, Judge.

THE COURT:  Let's do that.  Mr. Zick, hold on and we'll hear this from Ms. Konrad.

MS. KONRAD:  The contingency procedure is an Automatic External Defibrillator will be readily available on site.  In the event of cardiac arrest, trained medical personnel and emergency transportation shall be available in proximity to respond to the inmate should any medical emergency arise.  If at any point the team member determines any part of the execution is not going according to procedure, they shall advise the IV team leader who notifies the director, and the director will determine the appropriate procedures and stand down if necessary.

THE COURT:  Mr. Zick, do you dispute her summary there?

MR. ZICK:  That is the contingency plan that is listed in the protocol, correct.  Yes.

THE COURT:  And so at this point, he's still breathing, but you believe --

MR. ZICK:  He is.

THE COURT:  You believe from visual observations that he is brain dead, correct?

MR. ZICK:  It is an involuntary snoring that is apparently a reaction of the brain stem and not of the brain.

THE COURT:  Are there -- what are the indications as to whether -- well, I understand you have already answered that.

Now, you were just talking with the director.  Are you able to tell me what the director anticipates doing at this moment?  And please remind me of what the governor's role is under the protocol.

MR. ZICK:  I'm not sure what the governor's role is under the protocol, and I don't have the protocol in front of me.  All I know is that the governor's office received a call from Julie Hall and then called the director.  And the direct -- Dawn Northup was on the phone with me when the director received that call.  I don't know -- I can't tell you what the minute plan is right now.

THE COURT:  All right.  And Ms. Konrad, are you --

MR. ZICK:  I'm sorry, Judge, if I may.

THE COURT:  Go ahead.

MR. ZICK:  I just received a note that said that Mr. Wood stopped the snoring and involuntary action and the heart has slowed considerably.  So that's the updated information to

the minute that I have.

THE COURT: Now, before I get to some substance here, more substance, Ms. Konrad, I don't recall from my previous studies of protocols that may be out of date that the governor has any role. Is that correct?                    15:39:48

MS. KONRAD: Can you repeat that, Judge? I'm sorry.

THE COURT: I'm saying I don't recall from my previous examinations of protocols, which may be out of date now, that I don't recall that the governor has any role. Does the governor have any role?                                       15:40:04

MS. KONRAD: Off the top of my head, it's not -- I don't recall the governor having any role written in the protocol, either. Of course, as the governor of this state she could stop the execution, I assume.

THE COURT: I would assume -- go ahead, Mr. Zick.      15:40:16

MR. ZICK: Judge, I do recall the only -- the role of the governor that I recall in the protocol is simply calling to ensure that there are no stays of execution prior to the commencement of the execution.

THE COURT: All right. Now, of course I am            15:40:31
considering right now based on what's presented to me whether the execution should be suspended, but I am also -- it would be most helpful to know what the director intends to do immediately.

I am also very concerned, Ms. Konrad, that depending   15:40:49

on the accuracy of the information Mr. Zick has passed on that suspending the execution may do more harm than good.

Mr. Zick, what can you do very promptly to advise me of the director's intentions?  And if that means doing a quick call while we wait for three or five minutes, we'll do that. But I do intend to resolve this matter with extreme urgency in light of the nature of the matter and the inability to deliberate at any length.

So Mr. Zick, are you able -- what do you suggest in terms of getting us the most accurate information about the director's intention?

MR. ZICK:  I can go back into my office and if he's still on the phone I can talk with him, or I can give him an immediate call.

THE COURT:  Ms. Konrad, do you have any problem proceeding that way?  I would expect we would be back in contact within 5 or 10 minutes.

MS. KONRAD:  You can reach me at this same number, Judge Wake.

THE COURT:  I might prefer just to remain on the line and not have to reestablish the connection and allow Mr. Zick to make that call to the director, and I expect that his call will be taken.

MS. KONRAD:  That would be perfect.

THE COURT:  We will remain on the line, then, and Mr.

Zick, please do that.  And again, I do need to make a decision within a few minutes as to whether to suspend the execution.  So go ahead, Mr. Zick.

MR. ZICK:  Okay.  I will do that.  Thank you.

THE COURT:  All right.                                    15:42:34

Ms. Konrad, I don't want to lose the phone connection, but I'm going to put you on mute so that I can converse with my staff.

MS. KONRAD:  That's perfectly okay, Judge Wake.  Thank you.                                                          15:42:52

THE COURT:  We're going to do that right now.  And please hold however long it is.  Thank you.

MS. KONRAD:  Okay.

THE COURT:  We're going to go off the record while we're off the phone.                                              15:43:01

(Discussion off the record from 3:43 p.m. until 3:47 p.m.)

MS. KONRAD:  Judge Wake put us on mute.

THE COURT:  I have you both.  Go ahead, Mr. Zick.

MR. ZICK:  Okay.  The updated information, before I       15:47:50
get to any contingency, is that Mr. Wood has no respiration right now and his heart rate is 20 and falling.  That's on the medical side.

The director indicated that in consultation with the IV team leader, who is a medical doctor, Mr. Wood is apparently   15:48:10

comatose; that he cannot change course at this point, and the plan, I suppose, is to push chemicals based on the input from the IV team leader.

THE COURT:  Increase the chemical dosage?

MR. ZICK:  Right.

THE COURT:  Do we have -- do you have a sense of what the risk, the chances are of pain at this time?

MR. ZICK:  In talking with the director, who has been in consultation with the IV team leader, there has been no appearance of any pain.

THE COURT:  And with respect to the gasping and attempted breathing that Ms. Konrad reported initially, that, of course, could be indicative of pain.  But your report is that is now done, is that correct, that --

MR. ZICK:  There's no respiration.

THE COURT:  Ms. Konrad, I'm trying to lead this discussion in a way that gets to the decisions I have to make, and I have not been meaning to exclude anyone.  I invite you to tell me what you request.  And I just got your paper, and I have read it.  I invite you to tell me what it is that you ask of the Court and briefly your basis.  And again, my principal focus here is on the chance of pain.

Go ahead, Ms. Konrad.

MS. KONRAD:  Judge Wake, when we filed this motion 45 minutes ago when we got word he was gasping for over an hour,

our request was to immediately stay the execution and perform lifesaving techniques. I'm not a medical professional. I would still -- Mr. Zick has said the situation has changed. Without any further information, I'm not sure what more to say other than we're requesting the stay of execution. I'm not sure if that's possible at this time.

THE COURT: I understand.

Mr. Zick, do you want to be heard briefly in response to that statement? You don't have to say anything more.

MR. ZICK: I don't have anything other than the information I just gave.

THE COURT: All right. First of all, I thank both counsel. Ms. Konrad, I thank you for the urgency with which you have addressed all this, and Mr. Zick, I thank you for the luck that you are available and your prompt responses to my questions.

Looking at this from the perspective of Eighth Amendment prohibition of cruel and unusual punishment, I look at this in terms of what can be done, if anything, to eliminate or reduce pain that may be experienced. It's a matter of degrees of risk with less than certain knowledge.

Based on Mr. Zick's summary, it does appear to me that there is no serious risk of pain being experienced at this time. Now, maybe I should qualify that, that there -- we have to deal with degrees of uncertainty, but it does not appear

that with lack of physical reaction that there is pain.

I am also concerned that if it were possible to suspend this in a better circumstance, I would be disposed to do that if it did not create even more risk of pain.  It is not appearing to me that that is a realistic possibility at this time.  So -- and I summarize Mr. Zick, and I'm relying on -- and I do appreciate your presentation and information you have gathered that he has no physical response, is not breathing, that the heart rate is dropping.

And again, I want to confirm, the heart rate is dropping.  It's not stable at a low rate, but it is dropping. Is that your understanding, Mr. Zick?

MR. ZICK:  That's my understanding.  When the motion was filed, I believe his heart rate was above 20, but I can't verify that.  All I know is that I was told his heart rate was 20 when I called the director based on the Court's wish.

Wait.  I just -- I'm sorry, Judge.

THE COURT:  Go ahead.

MR. ZICK:  I just learned that the IV team leader has confirmed Mr. Wood's death.

THE COURT:  All right.  Let me finish my thought, because it's my responsibility.

Counsel, I have addressed this with utmost urgency, everything that's humanly possible to respond to Ms. Konrad's motion and approach to the Court.  To finish the thought, even

without this new confirmation, it does appear to me, and it is my judgment, that there was not a serious prospect of pain and that terminating the execution did not have prospect of eliminating pain, and even without my medical expertise, raises serious questions of whether keeping him alive could result in pain.

However, so I take -- counsel, that is my judgment in the circumstances, and of course I take responsibility for that.  This new input that the team leader has confirmed that Mr. Wood has expired resolves the matter as well.

Ms. Konrad, I know you are in quite a spot here, and I don't want -- I want to give you the opportunity to consider what it is that you want to request of the Court, if anything further.

MS. KONRAD:  Yes, Judge Wake.  I would just like to say for the record, at this point the finding that there was no evidence of pain is premature.  The reason --

THE COURT:  I'm sorry, Ms. Konrad.  I wonder, because I don't want you to be misled.  I am not finding that there was not pain before.  I'm not finding that at all.  I'm addressing the circumstance that we are in now.  With the necessity of having had even this extremely accelerated discussion, I am addressing the situation now, and that's what I'm addressing. So I do invite you to say whatever you would like about that. But I did not want you to misunderstand me as suggesting that

there had been a lack of pain before.  That is a matter that may come before the Court in plenary matter soon.

So go ahead, Ms. Konrad.

MS. KONRAD:  Thank you, Judge.  That was the main concern that I just wanted to make sure that we wouldn't come to you in this emergency posture if we hadn't had true concern and thought that our client was, in fact, suffering based on the witness's observations of him.  And I really appreciate you coming, and I know that you were at a ceremony for Judge Broomfield so I just would like to thank you for taking the time to hear this out even though the client eventually expired while we were on the phone.

THE COURT:  Not at all.  It's my responsibility.  And I have attempted to deal with it as rapidly as humanly possible.

Anything further, Mr. Zick?

MR. ZICK:  No, Your Honor.

THE COURT:  All right.  Well, I'm going to have the court reporter type up this transcript and file it so it's publicly available.  And just let me pause for a moment.

Mr. Zick, there are no other warrants of execution out for any of the other plaintiffs, correct?

MR. ZICK:  Correct, Judge.

THE COURT:  All right.  So there will -- there will be time to deal with whatever consequence these events have for

UNITED STATES DISTRICT COURT

other plaintiffs.

So with that, again, I thank both counsel for your diligence and the utmost urgency with which we addressed this matter.

Okay.  With respect to the motion that Ms. Konrad has filed, that's the Motion For Emergency Stay of Execution, Document Number 26, it is ordered that the motion is denied as moot for the reasons stated on the record.

With that, I thank you all, and we will be adjourned.

(Proceeding concluded at 3:57 p.m.)

C E R T I F I C A T E

I, LAURIE A. ADAMS, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 23rd day of July, 2014.

s/Laurie A. Adams

_____
Laurie A. Adams, RMR, CRR