THOMAS C. HORNE
ATTORNEY GENERAL
(FIRM STATE BAR NO. 14000)

JEFFREY A. ZICK (SBN 018712)
CHIEF COUNSEL

LACEY STOVER GARD (SBN 22714)
JOHN PRESSLEY TODD (SBN 003863)
JEFFREY L. SPARKS (SBN 027536)
MATTHEW BINFORD (SBN 029019)
ASSISTANT ATTORNEYS GENERAL

CAPITAL LITIGATION SECTION
1275 WEST WASHINGTON
PHOENIX, ARIZONA 85007-2997
TELEPHONE: (602) 542-4686
CADOCKET@AZAG.GOV

ATTORNEYS FOR DEFENDANTS

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| First Amendment Coalition of Arizona, Inc.; Charles Michael Hedlund; Graham S. Henry; David Gulbrandson; Todd Smith; and Eldon Schurz,<br><br>Plaintiffs,<br><br>-vs-<br><br>Janice K. Brewer, Governor, Charles L. Ryan, Director of ADC; Ron Credio, Warden, ASPC-Florence; Greg Fizer, Warden, ASPC-Florence; and Does 1-10, Unknown ADC Personnel, in their official capacities as Agents of ADC,<br><br>Defendants. | CV 14-1447-PHX-NVW-JFM<br><br>**MOTION TO DISMISS CLAIMS 2, 3, AND 9, AND PART OF CLAIM 1 OF THE FIRST AMENDED COMPLAINT** |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants move this Court to partially dismiss Claim 1 and to dismiss Claims 2, 3, and 9 of Plaintiffs' First Amended Complaint for failure to state a claim upon which relief can be

granted because these claims do not identify any unambiguous federal right and thus fail to allege any plausible First Amendment or due process claim justifying an extraordinary interference with the state's criminal process by the federal courts. This motion is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' First Amended Complaint, filed pursuant to 42 U.S.C. § 1983, alleges nine claims. In Claim 1, Plaintiff First Amendment Coalition of Arizona, Inc. ("Coalition"), alleges that Defendants have violated its First Amendment right of access to government proceedings by preventing it from observing the full execution procedure without interruption and by failing to provide information about certain details with respect to executions. In Claims 2 and 3, Plaintiffs Hedlund, Henry, Gulbrandson, Smith, and Schurz ("Inmates"), allege that Defendants' failure to provide information about certain details with respect to executions violates their First Amendment rights of access to government proceedings and to petition the government for the redress of grievances. In Claim 9, the Inmates allege that Defendants' execution protocols deprive them of their Fourteenth Amendment property interest in a "humane" death. In the remaining claims, the Inmates allege that Defendants have violated their rights under the Eighth and Fourteenth Amendments.

Plaintiffs seek temporary, preliminary, and permanent injunctive relief enjoining Defendants from concealing certain information and from executing the Inmates under the current or any future purportedly unconstitutional protocol, and an order declaring Defendants' current lethal injection practice unconstitutional. To be entitled to these equitable remedies, Plaintiffs must allege a likelihood of substantial and immediate irreparable injury resulting from the alleged violation of the Constitution or federal law. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). "The Supreme Court has repeatedly cautioned that, absent a threat of immediate and irreparable harm, the federal courts should not enjoin a state to

conduct its business in a particular way." *Hodger-Durgin v. de la Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999) (*en banc*) (citing Supreme Court cases). The proper balance between state and federal authority requires restraint in issuing injunctions against state officers engaged in administrating the States' criminal laws in the absence of immediate and substantial irreparable injury. *O'Shea v. Littleton,* 414 U.S. 488 499 (1974); *Hodger-Durgin*, 199 F.3d at 1042. Even if the Inmates' requested injunction were not aimed at stopping their executions, the last stage of their criminal proceedings, the "principles of equity nonetheless militate heavily against the grant of an injunction except in the most extraordinary circumstances." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976); *Hodger-Durgin*, 199 F.3d at 1042.

Here, the majority of Claim 1 and all of Claims 2, 3, and 9 allege no plausible immediate and irreparable harm directly resulting from the alleged violations of the First and Fourteenth Amendments. Balanced against this void is the "well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Hodger-Durgin*, 199 F.3d at 1043 (quoting *Rizzo*, 423 U.S. 378–79). This Court should therefore partially dismiss Claim 1 and dismiss Claims 2, 3, 8 and 9 of the First Amended Complaint for failure to state a claim upon which relief may be granted and summarily reject Plaintiffs' requests for injunctive relief predicated on these claims.[1] *See* Fed. R. Civ. P. 12(b)(6).

I. **APPLICABLE LEGAL STANDARDS.**

A 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In addressing such motions, the court must take

---

[1] This motion tolls the time to file an Answer to the First Amended Complaint. *See* Fed. R. Civ. P. 12(a)(4); *Thermolife Intern., LLC v. Gaspari Nutrition, Inc.*, 2011 WL 6296833 (D. Ariz. Dec. 16, 2011) ("[T]he majority of courts have expressly held that even though a pending motion to dismiss may only address some of the claims alleged, the motion to dismiss tolls the time to respond to all claims.").

3

all factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*.

A claim is subject to dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *see also Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *see also Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Factual allegations must be enough to raise a right to relief above the speculative level," and do more than create "a suspicion [of] a cognizable right of action." *Twombly*, 550 U.S. at 555. Dismissal is thus appropriate where the plaintiff's complaint lacks a cognizable legal theory, or lacks sufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Finally, the court may "draw on its judicial experience and common sense" in deciding whether a claim is plausible. *Iqbal*, 556 U.S. at 679.

An action instituted pursuant to 42 U.S.C. § 1983 challenges a State's "deprivation of any rights . . . secured by the Constitution and laws." *See also Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986) (plaintiffs must show that defendants acted under state law and deprived plaintiffs of rights secured by Constitution or federal statutes). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere

1 conferred. The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (plurality) (citation and internal quotation marks omitted). "[I]t is only violations of *rights*, not *laws*, which give rise to § 1983 actions." *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002) (emphasis original) (citing *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)). Section 1983 "merely provides a mechanism for enforcing individual rights 'secured' elsewhere[.]" *Gonzaga*, 536 U.S. at 285. "[A]nything short of an unambiguously conferred right" does not support an individual right of action under § 1983. *Id*. at 283. For Plaintiffs to succeed there first must be some federal right applicable to them, and second, there must be a plausible showing that the State has violated or will violate that right. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).

II.  **APPLICATION OF LAW TO PLAINTIFFS' CLAIMS.**

*Claim 1.*

The Coalition asserts that Defendants have violated its First Amendment right of access to government proceedings by preventing it "from aurally and visually observing the full execution proceeding without interruption, *including observing the prisoner being escorted into the execution chamber, witnessing the prisoner being strapped to the execution gurney*, the amounts of drugs actually used, the timing and method of their administration, and their effect upon the prisoner—from the time the prisoner is escorted to the execution chamber until the prisoner dies" and by failing to provide, "in advance of the execution, details about the drugs used, the rationale for the selection of these drugs and their dosages, the chain of custody in how the drugs were obtained and stored, the qualifications and training of the persons administering them, Defendants' expectation of the length of time the process will take to render the prisoner unconscious and to die and the rationale for that expectation, and Defendants' ability to respond and preparation for responding to complications." *See* First Amended Complaint at ¶¶ 135–38

5

(emphasis added). As explained below, all but the italicized portion of Claim 1 fails to state a plausible First Amendment violation.

The First Amendment does not include "a right of access to government information or sources of information within the government's control." *Houchins v. KQED*, 438 U.S. 1, 15 (1978) (plurality opinion); *see also Los Angeles Police Dep't v. United Reporting*, 528 U.S. 32, 40 (1999) ("[W]hat we have before us is nothing more than a governmental denial of access to information in its possession. California could decide not to give out arrestee information at all without violating the First Amendment."). Instead, "[a]s a general rule, citizens have no first amendment right of access to traditionally nonpublic government information." *McGehee v. Casey*, 718 F.2d 1137, 1147 (D.C. Cir. 1983); *see also McBurney v. Young*, __ U.S. __, 133 S. Ct. 1709, 1718 (2013) (This Court "has repeatedly made clear that there is no constitutional right to obtain all the information provided by FOIA laws."). To be clear, "[t]here is no constitutional right to have access to particular government information, or to require openness from the bureaucracy." *Houchins*, 438 U.S. at 14.

In contrast, the Supreme Court has recognized a qualified First Amendment right of access to certain to governmental *proceedings*, mostly court proceedings. For example, the Supreme Court has recognized a public right of access to proceedings in criminal trials, including: preliminary hearings, *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8–14 (1986) ("*Press-Enter. II*"); voir dire, *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510–11 (1984) ("*Press-Enter. I*"); the testimony of a child victim of a sex offense, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603–11 (1982); and criminal trials in general, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 579 (1980).

The Ninth Circuit has similarly recognized a qualified First Amendment right of access to "criminal proceedings and documents filed therein." *CBS, Inc. v. Dist. Court*, 765 F.2d 823, 825 (9th Cir. 1985). Access to "documents filed

therein" has been limited to "documents that transcribe or memorialize official proceedings," *Wood v. Ryan*, 759 F.3d 1076, 1091 (9th Cir. 2014) (Bybee, J., dissenting), such as transcripts of closed hearings that occurred during jury deliberations, *Phoenix Newspapers, Inc. v. United States Dist. Court*, 156 F.3d 940, 949 (9th Cir. 1998); plea agreements and related documents, *Oregonian Publ'g Co. v. United States Dist. Court*, 920 F.2d 1462, 1465–66 (9th Cir. 1990); pretrial release proceedings and documents, *Seattle Times Co. v. United States Dist. Court*, 845 F.2d 1513, 1517 (9th Cir. 1988); and pretrial suppression hearings, *United States v. Brooklier*, 685 F.2d 1162, 1170–71 (9th Cir. 1982).

The Ninth Circuit has extended this principle to include a public right to view executions. *Cal. First Amendment Coal. v. Woodford*, 299 F.3d 868, 874 (9th Cir. 2002). The court reached this conclusion after addressing the considerations set forth in *Press-Enter. II* for determining whether the public has a right of access to a particular government proceeding: (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Cal. First Amendment Coal.*, 299 F.3d at 875 (quoting *Press-Enter. II*, 478 U.S. at 8–9). These considerations weighed in favor of a public right to view executions because "[h]istorically, executions were open to all comers" and "[i]ndependent public scrutiny . . . plays a significant role in the proper functioning of capital punishment." *Id.* at 875, 876.

The court concluded in *California First Amendment Coalition* that "the public enjoys a First Amendment right to view executions from the moment the condemned is escorted into the execution chamber." *Id.* at 877; *see also Assoc. Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (instructing district court to enter order requiring state to allow witnesses to observe execution "from the moment [he] enters the execution chamber through, to and including, the time [he] is declared dead"). Currently, Arizona's protocol allows for the witnesses to an

execution to begin viewing, via closed-circuit monitors, when the IV Team conducts its vein assessment and placement of catheters. *See* Exhibit to First Amended Complaint, at Attachment D (D.10.) (Dkt. 51-1, at 31.) Accordingly, Defendants do not seek dismissal of that aspect of Claim 1 asserting a First Amendment right to "observ[e] the prisoner being escorted into the execution chamber [and] witness[] the prisoner being strapped to the execution gurney."[2] *See* First Amended Complaint at ¶ 137.

The remainder of Claim 1, however, fails to state a claim upon which relief can be granted. While the Ninth Circuit has held that the public enjoys the First Amendment right to view an execution "from the moment [the inmate] enters the execution chamber through, to and including, the time [the inmate] is declared dead." *Cal. First Amendment Coal.,* 299 F.3d at 886 (internal quotation marks omitted), no court has held that, over and above the right to *view* the execution, the public possesses a First Amendment right to see "the amounts of drugs actually used, the timing and method of their administration, and their effect[3] upon the prisoner." *See* First Amended Complaint, at ¶ 137.

The public, including the Coalition, also does not possess a First Amendment right to the information the Coalition requests: the source of the lethal injection drugs used, the drugs' chain of custody, specific qualifications of execution team members, and Defendants' thought processes regarding the particular drugs and dosages selected, the amount of time the execution is expected to take, and contingency plans. Neither the Supreme Court's, nor the Ninth Circuit's, right-of-access jurisprudence provides access to this information because

---

[2] Defendants do not concede that the Coalition is entitled to relief on this narrow aspect of Claim 1, but simply acknowledge that this portion of the claim does not meet the standard for dismissal for failure to state claim under Rule 12(b)(6).

[3] By viewing the execution, witnesses are able to see the effect of the drugs on the prisoner.

unlike courtroom proceedings, there are no "documents filed therein" with respect to an execution. *See CBS*, 765 F.2d at 825. The "access" the Coalition seeks is not access to a proceeding or documents filed therein, but to information in the government's possession. *California First Amendment Coalition*, however, says nothing about information in the government's possession, but merely addresses the public's right to *watch* an execution. *Wood*, 759 F.3d at 1093 (Bybee, J., dissenting.) Applying the right of access to government proceedings to the information the Coalition requests would cause "what used to be a limited exception to swallow the default rule, which is that 'the First Amendment . . . [does not] mandate[] a right of access to government information or sources of information within the government's control.'" *Id.* (quoting *Houchins*, 438 U.S. at 15).

Furthermore, other courts to have addressed this issue have concluded that the public has no First Amendment right to the source and manufacturer of lethal injection drugs and the qualifications of those who will administer them. *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1260, 1266–67 (11th Cir. 2014) (per curiam) (no First Amendment right to source and manufacturer of lethal injection drugs or "the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters"); *Owens v. Hill*, 753 S.E.2d 794, 805 (Ga. 2014) (First Amendment did not apply to source of execution drugs); *but see Schad v. Ryan*, 2013 WL 5551668, *4–9 (D. Ariz. Oct. 7, 2013) (finding First Amendment right to know the manufacturer of lethal injection drugs). And in this case, the Supreme Court vacated the Ninth Circuit panel decision that found plausible the First Amendment right the Coalition asserts. *Ryan v. Wood*, 573 U.S. __, 2014 WL 3600362, *1 (July 22, 2014) (vacating *Wood*, 759 F.3d 1076). The Supreme Court further expressly held that the "district judge did not abuse his discretion in denying Wood's motion for a preliminary injunction." *Id.* In that case Wood was proceeding as a member of the public.

There is no unambiguous right that makes the majority of this Claim plausible. The public's First Amendment right asserted by the Coalition extends to its ability to view an execution and nothing more. It has no First Amendment right to see "the amounts of drugs actually used, the timing and method of their administration, and their effect upon the prisoner," or to receive execution-related information. Accordingly, with the exception of the Coalition's request to view the inmate being brought into the execution room and being strapped to the gurney, the remainder of Claim 1 fails to state a claim upon which relief can be granted and should be dismissed. *See* Fed. R. Civ. P. 12(b)(6).

*Claim 2.*

The Inmates allege the same First Amendment public right of access to the execution-related information sought by the Coalition in Claim 1. First Amended Complaint, at ¶¶ 139–42. Because there is no First Amendment right of access to this information, Claim 2 also fails to state a claim upon which relief can be granted, and should be dismissed. *See* Fed. R. Civ. P. 12(b)(6). The Supreme Court's unanimous decision in this case explicitly finding that this Court did not abuse its discretion in denying Wood's motion for a preliminary injunction based on this First Amendment claim supports a finding that the claim is legally without merit. *See Wood*, 573 U.S. __, 2014 WL 3600362. After all "[a] federal court will only grant a stay of execution where the inmate seeking the stay can show a significant possibility of success on the merits." *Moormann v. Schriro*, 672 F.3d 644, 647 (9th Cir. 2012) (citing *Hill v. McDonough*, 547 U.S. 573, 584 (2006)).

*Claim 3.*

The Inmates allege that Defendants have violated their First Amendment right to petition the government for redress of grievances by "deliberately concealing information about the specific drugs, expiration dates, provenance, storage, dosages, administration technique, and other details about how Defendants intend to execute" them. First Amended Complaint, at ¶¶ 143–52.

"Among other rights essential to freedom, the First Amendment protects 'the right of the people . . . to petition the Government for a redress of grievances.'" *Borough of Duryea, Pa. v. Guarnieri*, __ U.S. __, 131 S. Ct. 2488, 2491 (2011) (quoting U.S. Const. amend. I). There is no question that "prisoners retain the constitutional right to petition the government for the redress of grievances." *Turner v. Safley*, 482 U.S. 78, 84 (1987). This right "includes a reasonable right of access to the courts." *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). But the right of access to the courts is not an unlimited one; it assures only "meaningful access to the courts." *Bounds v. Smith,* 430 U.S. 817, 823 (1977). Thus, the right does not "enable the prisoner to discovery grievances, and to litigate effectively once in court." *Williams v. Hobbs*, 658 F.3d 842, 851–52 (8th Cir. 2011). Instead, the right of access to courts protects only "the capability of bringing contemplated challenges to sentences or conditions of confinement." *Lewis v. Casey*, 518 U.S. 343, 356 (1996).

The rights to petition the government and of access to courts do not equal a right to discover information in the government's control. In fact, the Supreme Court has rejected the idea that the right of access to courts includes a right to "discover" information. *See Lewis*, 518 U.S. at 354. In this case, Defendants' failure to provide the Inmates with the requested information does not restrict their First Amendment right to petition the government. In fact, all of the named Inmate Plaintiffs have had numerous opportunities to access the courts without any interference from Defendants. The fact that the Inmates here have brought an Eighth Amendment challenge to Arizona's protocol belies their argument that they have been denied access to the courts:

> The prisoners do not assert that they are physically unable to file an Eighth Amendment claim, only that they are unable to obtain the information needed to discover a potential Eighth Amendment violation. Secondly, the prisoners do not demonstrate "actual injury" because they cannot show that litigating an execution protocol first

11

> requires access to the protocol. Indeed, the prisoners argument is belied by the fact that they brought an Eighth Amendment challenge to the then unknown AD 08–28 while asserting in their court filings that the lethal injection proceedings are "top secret."

*Williams*, 658 F.3d at 852; *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430–31 (7th Cir. 1996) ("Moreover, Mr. Antonelli's invocation of the judicial process indicates that the prison has not infringed his First Amendment right to petition the government for a redress of grievances.").

Moreover, courts have uniformly rejected similar claims, whether couched as claims under the First Amendment or other constitutional provisions. For example, the Eighth Circuit has held that a death row inmate's argument grounded in an inability to *discover* potential claims fails to state a plausible access-to-the-courts claim because the inability to discover claims does not violate due process, *see Williams*, 658 F.3d at 852, and that the Eighth Amendment does not entitle a death row inmate to information about the physician, pharmacy, and laboratory involved in the execution process absent plausible allegations of a feasible and more humane alternate method of execution or purposeful design by the State to inflict unnecessary pain. *In re Lombardi*, 741 F.3d 888, 895–96 (8th Cir. 2014) (en banc). Similarly, the Fifth Circuit and Supreme Court of Georgia have rejected claims that failure to provide information regarding the method of execution deprives an inmate of access to the courts. *Whitaker v. Livingston*, 732 F.3d 465, 467 (5th Cir. 2013) (rejecting Fourteenth Amendment, Supremacy Clause, and access-to-the-courts claims challenging state's failure to disclosure information regarding the method of execution in a timely manner absent a plausible Eighth Amendment claim); *Owens*, 758 S.E.2d at 803–04. The constitution simply does not provide the Inmates with a right to receive the information they seek.

Finally, to establish a denial of meaningful access to the courts, a plaintiff must establish an "actual injury" as a result of the defendant's actions. *Lewis*, 518

U.S. at 348. For there to be an actual injury with respect to the planned or existing litigation, the State must cause an inability, such as to meet a filing deadline or to present a claim. *Id*. Here, the Inmates' access to the courts has not been hindered. The Inmates do not allege that Defendants have retaliated against them or interfered with their access to the courts. Instead, they merely claim that Defendants have refused to provide certain information. *See* First Amended Complaint ¶¶ 149–51. But as the Supreme Court has stated, and other courts have reinforced, the State has no obligation under right-of-access-to-the-courts jurisprudence to enable a prisoner to discover grievances and litigate effectively. *Lewis*, 518 U.S. at 354; *Lombardi*, 741 F.3d at 895–96; *Whitaker*, 732 F.3d at 467; *Williams*, 658 F.3d at 852; *Owens*, 758 S.E.2d at 803–04.

The Inmates have therefore failed to allege a plausible First Amendment right-of-access claim, and Claim 3 should be dismissed.

*Claim 9.*

The Inmates allege that Arizona's "statute authorizing execution by lethal injection" confers on them a property interest in a "humane" death, and that Defendants' lethal injection protocol violates the Due Process Clause of the Fourteenth Amendment by depriving them of this property interest. First Amended Complaint, at ¶¶ 175–79.

The Inmates fail to specify whether they are alleging a violation of procedural or substantive due process. But either theory fails to state a claim for relief. "Where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright,* 510 U.S. at 273 (1994) (Rehnquist, C.J., for plurality) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). In other words, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must

13

1  be analyzed under the standard appropriate to that specific provision, not under the
2  rubric of substantive due process." *United States v. Lanier,* 520 U.S. 259, 272 n. 7
3  (1997); *see also Patel v. Penman,* 103 F.3d 868, 874 (9th Cir.1996) (where a
4  particular Amendment provides an explicit textual source of constitutional
5  protection against a particular sort of government behavior, that Amendment, not
6  the more generalized notion of "substantive due process must be the guide for
7  analyzing a [plaintiff's] claim").

8  Insofar as the Inmates allege a substantive due process violation, this claim
9  is not plausible because an inhumane execution is precisely the sort of government
10 action against which the Eighth Amendment's ban on cruel and unusual
11 punishment provides explicit textual protection.  *See Whitley v. Albers*, 475 U.S.
12 312, 327 (1986) (Eighth Amendment serves as the primary source of substantive
13 protection to convicted prisoners); *see also, e.g., Baze v. Rees*, 553 U.S. 35, 49–50
14 (2008) (Eighth Amendment protects against execution methods that create
15 "substantial risk of serious harm"); *Furman v. Georgia*, 408 U.S. 238, 359 n.141
16 (1972) (Marshall J., concurring) ("The concepts of cruel and unusual punishment
17 and substantive due process become so close as to merge . . . .").  Accordingly, the
18 Sixth Circuit rejected a stay of execution based on a claim that Ohio law created a
19 property interest in a "quick and painless execution" since the prisoner was
20 "unlikely to show that the reach of any such right extends beyond the incorporation
21 of the Eighth Amendment."  *Cooey v. Strickland*, 589 F.3d 210, 234 (6th Cir.
22 2009).  Similarly, here, the Inmates' substantive due process claim is not plausible
23 in light of the Eighth Amendment's protections.

24 A procedural due process claim would similarly fail.  A procedural due
25 process claim is not cognizable "where the existence of an unconstitutional
26 policy . . . , rather than the procedure which leads to it, is challenged." *Johnson v.*
27 *State of Cal.*, 207 F.3d 650, 656 (9th Cir. 2000).  Here, the Inmates are not
28 challenging a procedure, but rather are asserting that the execution protocol fails to

protect their alleged interest in a "humane" execution. Therefore, in this case, a procedural due process claim is not cognizable. *Id.*

The Inmates' allegation of a due process violation fails to state a claim on which relief may be granted, and should be dismissed. *See Cooey*, 589 F.3d at 234; *Johnson*, 27 F.3d at 656 (affirming dismissal of prisoner's due process claims where Equal Protection applied to the challenged actions and prisoner challenged a policy, rather than a procedure).

## CONCLUSION

For the reasons outlined above, the Court should dismiss Claim 1 in part and dismiss Claims 2, 3, and 9 for failure to state claim upon which relief can be granted.

RESPECTFULLY SUBMITTED this 9th day of October, 2014.

Thomas C. Horne
Attorney General

Jeffrey A. Zick
Chief Counsel

s/ *JEFFREY A. ZICK*
Jeffrey A. Zick
Jeffrey L. Sparks
Lacey Stover Gard
Matthew Binford
John Pressley Todd
Assistant Attorneys General
Capital Litigation Section

Attorneys for Defendants

15

CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2014, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants, and emailed same to the counsel for the Coalition:

Dale A. Baich
Robin C. Konrad
Assistant Federal Public Defenders
850 W. Adams St., Ste 201
Phoenix, Arizona  85007
Attorneys for Plaintiff

Mark E. Haddad
mhaddad@sidley.com

Alycia A. Degen
adegen@sidley.com

Joshua E. Anderson
janderson@sidley.com

Aimee G. Mackay
amackay@sidley.com

Collin P. Wedel
cwedel@sidley.com

Lauren A. McCray
lmccray@sidley.com

Counsel for the Coalition and Plaintiffs

s/   L. Gallagher

4155981