MARK BRNOVICH
ARIZONA ATTORNEY GENERAL
Firm State Bar No. 14000

SOLICITOR GENERAL'S OFFICE
David D. Weinzweig (018687)
Senior Litigation Counsel

CAPITAL LITIGATION SECTION
Lacey Stover Gard (022714)
Section Chief Counsel
John Pressley Todd (003863)
Jeffrey L. Sparks (027536)
Assistant Attorneys General

1275 West Washington
Phoenix, Arizona 85007-2997
Telephone: (602) 542-3333
David.Weinzweig@azag.gov
CADocket@azag.gov

Attorneys for State Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| First Amendment Coalition of Arizona, Inc.; Charles Michael Hedlund; Graham S. Henry; David Gulbrandson; Robert Poyson; Todd Smith; Eldon Schurz; and Roger Scott,<br><br>    Plaintiffs,<br><br>v.<br><br>Charles L. Ryan, Director of ADC; James O'Neil, Warden, ASPC-Eyman; Greg Fizer, Warden, ASPC-Florence,<br><br>    Defendants. | No. 2:14-cv-01447-NVW<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>**Oral Argument Requested**<br><br>(Assigned to the Honorable Neil Wake) |

Plaintiffs do not and cannot meet the bedrock requirements of Rule 8, Fed. R. Civ. P., and their Second Amended Complaint must be dismissed under Rule 12(b)(6), Fed. R. Civ. P. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (dismissing method-of-execution challenge for failure to state a claim under Rule 12(b)(6)). In particular:

- **The Eighth Amendment claims still fail**. Plaintiffs cannot avoid the controlling and binding U.S. Supreme Court decisions in *Glossip v. Gross*, 135 S.Ct. 2726 (2015), and *Baze v. Rees*, 553 U.S. 35 (2008), which eviscerate their Eighth Amendment claims. Nor have Plaintiffs pled a facially plausible claim under the Eighth Amendment's heavy "sure or very likely" standard.

- **The First Amendment claims still fail**. The First Amendment claims still hinge on unrecognized and unrecognizable First Amendment rights that find no basis in the Constitution's text or the common law.

- **The Due Process Clause and Equal Protection Clause claims still fail**. All remaining claims still fail as derivative, repackaged First and Eighth Amendment claims. These remaining claims and arguments have been uniformly rejected by federal courts.

Unable to squarely address the State Defendants' arguments, Plaintiffs resort to a familiar tactic—they float more butterflies. Most prominently, Plaintiffs attach the ballot materials from the 1992 general election in which Arizona voters amended the Arizona Constitution to adopt lethal injection. But Arizona voters did not intend to create an amorphous First Amendment right to die in what Plaintiffs speculate will be visual pain or distress. And just as important, *if* Plaintiffs want to emphasize the voter initiative, they must *also* concede that their single path forward lies in legislative and general election arenas, not in federal court.

## ARGUMENT

## I. THE EIGHTH AMENDMENT CLAIMS STILL FAIL.[1]

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of a complaint." *Cook*, 637 F.3d at 1004. At issue here is whether Plaintiffs have pled a facially plausible Eighth Amendment claim and, in particular, whether the allegations make it "*sure or very likely*" that

---

[1] Second Amended Complaint (SAC), Claims One and Six.

1

Plaintiffs will suffer "serious illness and needless suffering," giving rise to "sufficiently imminent dangers" in violation of their Eighth Amendment rights. *Id.* (*citing Baze*, 553 U.S. at 49-50).

The answer is "no." Rule 8 requires more than rhetoric, naked conclusions, and unadorned speculation. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (holding that minimum pleading requirements "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

## A. Supreme Court case law provides no precedent for Plaintiffs' Eighth Amendment claims.

Plaintiffs first argue that "Defendants' proposed use of a paralytic with midazolam and [potassium chloride] is constitutionally indefensible." (Opp. at 2.) Hardly. Only nine months ago, the U.S. Supreme Court held the *identical* three-drug protocol to be constitutional. *Glossip*, 135 S.Ct. 2726 (2015). Indeed, *Glossip* involved the *same* attorneys challenging the *same* three-drug execution protocol based on many of the *same* arguments offered here. And, only eight years ago, the Court held that administration of the *identical* paralytic challenged here was constitutional. *Baze*, 553 U.S. 35 (2008).

Undeterred, Plaintiffs argue that "*Glossip* does not foreclose this claim" because the Court "had no occasion to weigh a challenge to the paralytic." (Opp. at 3-4.) Even if true, that argument is misdirected. *Glossip* determined that 500 milligrams of midazolam (precisely the dose to be used in Arizona) is more than enough to render inmates unconscious and insensate when the State administers the paralytic and potassium chloride. *Glossip*, 135 S.Ct. 2739-41 (collecting state and federal decisions reaching the same conclusion). An unconscious and insensate inmate suffers no pain; and no pain means no Eighth Amendment claim.

Plaintiffs next insist that "the paralytic serves no legitimate purpose." (Opp. at 2-3.) But the *Baze* plaintiffs raised that *identical* argument—namely, "that Kentucky should omit the second drug, pancuronium bromide, because it serves no therapeutic purpose while suppressing muscle movements that could reveal an inadequate administration of the first

drug." *Baze*, 553 U.S. at 57. And the Supreme Court rejected it. The Court found that the paralytic served two important purposes and that its administration does not violate the Eighth Amendment:

> *First*, [the paralytic] prevents involuntary physical movements during unconsciousness that may accompany the injection of potassium chloride. The Commonwealth has an interest in preserving the dignity of the procedure, especially where convulsions or seizures could be misperceived as signs of consciousness or distress. *Second*, [the paralytic] stops respiration, hastening death. *Kentucky's decision to include the drug does not offend the Eighth Amendment*.

*Id.* at 57-58 (emphasis added).

Plaintiffs do not and cannot articulate any reason for this Court to ignore two recent U.S. Supreme Court decisions that considered and rejected their theories. Nor can Plaintiffs avoid or distinguish the twin dispositive landmines of *Baze* and *Glossip*. U.S. Supreme Court decisions bind this Court. *U.S. v. Ameline*, 409 F.3d 1073, 1111-12 (9th Cir. 2005) ("We do not have the authority to overrule Supreme Court precedent") (*citing Agostini v. Felton*, 521 U.S. 203, 237 (1997)).

In the end, Plaintiffs' resurrected challenge to administration of the paralytic must be dismissed for "lack of a cognizable legal theory" and "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Even assuming the truth of its allegations, the Second Amended Complaint does not plausibly suggest that administration of the paralytic is "sure or very likely" to result in needless pain, suffering and sufficiently imminent harm.[2]

---

[2] Contrary to Plaintiffs' representation, Plaintiffs did not plead an "alternative procedure" that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain" as required under *Baze*, 553 U.S. at 35, and *Glossip*, 135 S.Ct. at 2737-38. To show they did, Plaintiffs tout six paragraphs in their Complaint. (Opp. at 4.) Not one mentions, much less alleges, any "feasible" and "readily implemented" alternatives. Indeed, the State Defendants asked Plaintiffs to meet *Glossip*'s requirements before filing this motion, but they chose not to. Nor can the Opposition present new allegations for consideration under Rule 12(b)(6). *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir.1998) ("In determining the

3

**B.** **Plaintiffs have no Eighth Amendment claim premised on past "deviations" from written procedures or "unbounded discretion."**

Plaintiffs next argue that their Eighth Amendment rights are in jeopardy because the State has "boundless discretion" and "routinely deviates from its written execution procedures." (Opp. at 1, 13.) In support, Plaintiffs point to their allegations that the State Defendants (1) "inject[ed] chemicals into a corpse" six years ago, (2) injected potassium chloride into an inmate "before a consciousness check" five years ago, and (3) "chang[ed] drugs mere hours before an execution" in 2011 and 2012. (Opp. at 1, 14.) Plaintiffs also allege that the State Defendants retain discretion "to inject prisoners without any prior notice or disclosure, to turn off the audio or the video, or close the curtain, at any time during the execution." (Opp. at 13.)

This claim fails. First, Plaintiffs never explain how the alleged "deviations" or "unbounded discretion" make it "*sure or very likely*" that *their* executions will cause "serious illness and needless suffering," creating "sufficiently *imminent* dangers" in violation of their Eighth Amendment rights. *Baze*, 553 U.S. at 49-50 (emphasis in original). Nor could they. The alleged incidents caused no pain, visible or otherwise—(1) a corpse cannot feel pain, (2) the inmate who allegedly received potassium chloride without a consciousness check died in 17 minutes without showing any sign of pain, and (3) the inmates who allegedly had their execution cocktail changed hours before their 2011 and 2012 executions died in 11, 10, and 9 minutes, respectively. (SAC at ¶¶ 61, 62, 73, 76.) This alone compels a Rule 12(b)(6) dismissal.

Nor do Plaintiffs even mention other Eighth Amendment requirements, including that the Director "exercised his discretion in a manner that eliminated critical safeguards or heightened the risk of pain to the prisoners." *West v. Brewer*, 11-cv-1409-NVW, 2011 WL 2836754, *6, *17 (D. Ariz. July 18, 2011). (Opp. at 12-14.) And their claim fails to

---

propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.")

acknowledge that "the Eighth Amendment does not require inflexibility" and that "[s]ome deviation during implementation may be necessary." *Id.* at *17.

Second, the Eighth Amendment does not protect death row inmates from the administration of allegedly superfluous drugs; nor does it protect the dead from cruel and unusual punishment, especially when the "punishment" is more drugs to ensure the inmate is indeed dead.

Third, Plaintiffs unconvincingly pick two half-sentences from Department Order 710 and offer them as proof that Director Ryan has "discretion to deviate from the procedures at any time and in any way." (Opp. at 12.) Among other things, this unsupported conclusion ignores the *next two sentences* in Department Order 710, which require the Department to "ensure[] the execution of a person sentenced to death ... is carried out in keeping with statute, case law, and professional practices," and "make every effort ... to ensure the execution process faithfully adheres to constitutional mandates against cruel and unusual punishment." (Department Order 710 at 002.) Plaintiffs' legal conclusion is also false. The State Defendants are firmly bound by many sources, including the U.S. Constitution, the Arizona Constitution, federal law, state law, extensive state and federal regulations, and detailed internal directives. *See, e.g.*, U.S. Const. Amend. I, VIII; 21 U.S.C. § 822 (DEA registration requirements); 21 C.F.R. § 1301 (same); Ariz. Const. art. 2, § 15 (cruel and unusual punishment), art. 22, § 22 (lethal injection); A.R.S. §§ 13–757, –758, –759 (capital sentences), 39–121 et seq. (state public records law); Department Orders 501 (ethics), 710 (executions). Plaintiffs cannot meet federal pleading requirements with naked legal conclusions and unsupported absolutes.

Finally, Plaintiffs cannot exploit Joseph Wood's execution as foundation for their claims. Wood was not executed with the paralytic that forms the basis of Plaintiffs' lawsuit. Indeed, the State Defendants adopted the three-drug Protocol challenged here after and in response to recommendations from an independent panel that examined Wood's execution.

Moreover, even indulging Plaintiffs' characterization of Wood's execution, the Supreme Court has rejected Eighth Amendment theories based on an "isolated mishap." (Mot. at 11.)

Ironically, the U.S. Supreme Court anticipated and rejected this very argument in *Glossip*, where the *same* attorneys here challenged the *same* three-drug protocol here based on the *same* incompatible argument here—namely, that "Arizona's July 2014 execution of Joseph Wood establish[es] that midazolam is sure or very likely to cause pain" and "that midazolam, the first drug employed in the State's current three-drug protocol fails to render a person insensate to pain." *Glossip*, 135 S.Ct. at 2745-46. The Supreme Court disagreed, explaining that Joseph Wood's execution was irrelevant because "the Wood execution did not involve the protocol at issue here." *Id*. ("And Arizona used a different two-drug combination that paired midazolam with hydromorphone, a drug that is not at issue in this case.").

## II. THE BODILY INTEGRITY CLAIM STILL FAILS.[3]

The Death Row Inmates next float an alternative theory that *if* midazolam renders them unconscious and insensate, *then* the State's administration of a paralytic violates their "fundamental right to bodily integrity" because "Defendants can no more inject a prisoner with a gratuitous dose of a paralytic than they could with any other drug; prisoners may be executed, but not mutilated or experimented on." (Opp. at 2, 7-9.)

This "argument is full of internal contradictions and (it must be said) gobbledy-gook." 135 S.Ct. at 2747 (J. Scalia, concurrence). It finds no support in other death penalty decisions. And Plaintiffs point to nothing—not one decision that has recognized a death row inmate's right to be executed in a manner that preserves his "bodily integrity." Second, Plaintiffs have the argument backwards. It is Plaintiffs and their anti-death-penalty supporters who want to experiment here by erasing a long-used and long-recognized paralytic from the execution cocktail.

---

[3] SAC, Claim Two.

And third, injecting additional lethal chemicals into an inmate during his execution is hardly "mutilation," especially when administered to expedite and ensure the execution.[4]

Plaintiffs' cited decisions neither resemble this lawsuit nor support their argument. This case is not about someone who died in a high-speed police chase, *Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998); a mentally ill prisoner who needs but won't accept antipsychotic drugs, *Washington v. Harper*, 494 U.S. 210 (1990); a challenge to prison mail and marriage regulations, *Turner v. Safley*, 482 U.S. 78 (1987); doctors who treat severe head injuries in the emergency room, *Johnson v. Meltzer*, 134 F.3d 1393 (9th Cir. 1998); or whether death scene photographs can be disclosed against a family's will, *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004).

## III.    THE FIRST AMENDMENT CLAIMS STILL FAIL.[5]

Plaintiffs have not pled and cannot plead any plausible First Amendment claim; nor can they refashion the Eighth Amendment claims as First Amendment claims, especially when the U.S. Supreme Court has upheld the challenged method as constitutional under the Eighth Amendment.  The First Amendment has no connection with the State's chosen method of execution.  Nor are federal courts a proper tool for the exploration of larger themes and societal narratives premised on pure speculation.

### A.    Plaintiffs have not pled a First Amendment claim based on administration of the paralytic.

Plaintiffs briefly defend their First Amendment claim to unmask what they speculate will be visual pain and distress.  (Opp. at 5-6.)  Plaintiffs refashion their claim as a learning exercise premised on pure speculation—literally "ifs" and "buts."  Plaintiffs argue:  "*But if* the harsh reality of a midazolam-[potassium chloride] execution is that the prisoner experiences pain and

---

[4] Plaintiffs even argue that the State has no "license to inject [them] with drugs," Opp. at 8, despite uniform and copious authorities to the contrary, *see*, *e.g.*, *Glossip*, 135 at 2733 ("*Baze* cleared any legal obstacle to use of the most common three-drug protocol that had enabled States to carry out the death penalty in a quick and painless fashion.").

[5] SAC, Claims One, Three, Four, and Five.

distress then, as *Woodford* holds, 'it is critical for the public to be reliably informed about that pain.'" (Opp. at 6.)

That argument fails. Federal courts have never recognized the fanciful First Amendment right urged here, which collides head-on with the Eighth Amendment. (Mot. at 13.) And Plaintiffs' singular and frequent reliance on *Cal. First Amend. Coal. v. Woodford* is misplaced. 299 F.3d 868 (9th Cir. 2002). To be clear: *Woodford* holds that witnesses have the right to "*view* executions" from start to finish, including the inmate's entrance into the chamber, restraint, and insertion of IV lines. *Id*. at 870–71 (emphasis added). That's all. The decision never mentions, much less opines upon, a method-of-execution challenge.[6]

### B. Still no plausible First Amendment claims for right of access to governmental proceedings or right of access to courts.

Plaintiffs argue that their government access rights compel the State Defendants to (1) allow them to watch a separate control room in which an execution team remotely administers lethal drugs through plastic tubing, and (2) provide them with detailed and sensitive information about ADC personnel and the provenance of lethal chemicals. (Opp. at 9, 11-12.)

This free-floating First Amendment claim fares no better. Plaintiffs' singular and emphatic reliance on *Woodford* is again misplaced. (Opp. at 9-11, nine citations to *Woodward*.) For starters, the procedure challenged in *Woodford* "prohibit[ed] witnesses from observing the execution until *after* the execution team members exit the chamber." *Id*. at 871 (emphasis added). In Arizona, conversely, all witnesses are permitted to watch the entire execution, from the moment the inmate walks into the chamber until he is pronounced dead. (Mot. at 17.)

Second, *Woodford* neither articulates nor envisions a broad, free-floating First Amendment right to information. It only recognized a time-limited right to watch the execution chamber, not separate control rooms where personnel mix and administer lethal chemicals

---

[6] Plaintiffs' procedural due process blurb (Opp. at 7) is unpersuasive since Plaintiffs' offer no rejoinder to the dispositive argument that the Eighth Amendment's specific textual protections govern. (Mot. at 15 (*citing U.S. v. Lanier*, 520 U.S. 259, 272 n.7 (1997); Opp. at 12-14.)

through plastic tubing. *Woodford*, 299 F.3d at 877.

Furthermore, federal courts have uniformly rejected the notion that inmates have broad First Amendment rights to access information. *See, e.g., Zink v. Lombardi*, 783 F.3d 1089, 1112–13 (8th Cir. 2015); *Wellons v. Comm'r*, 754 F.3d 1260, 1266–67 (11th Cir. 2014); *Wood v. Ryan*, No. CV-14-1447-NVW (D. Ariz. July 10, 2014), *aff'd by Ryan v. Wood*, 135 S. Ct. 21 (2014) (mem.). Plaintiffs fail to distinguish *Zink* on grounds that the Eighth Circuit "expressly acknowledged that its First Amendment analysis was directly contrary to *Woodford*" because *Zink* also said that those inmate plaintiffs would have failed to state a claim under *Woodford*. *Zink*, 783 F.3d at 1112–13.

Plaintiffs next argue that the State has deprived them "of the 'tools' required to litigate their constitutional deprivations." (Opp. at 12.) But Plaintiffs' cited cases describe only a right of access that is infringed when the State prevents inmates from meeting filing deadlines or presenting a claim. *See Lewis v. Casey*, 518 U.S. 343, 348 (1996); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (inmate stated plausible access-to-courts claim where denial of access to prison law library prevented him from appealing conviction). Plaintiffs have timely asserted claims here—they have the required "tools." Indeed, this litigation's existence belies Plaintiffs' contention that the State has denied them access to the courts. (Mot. at 14.) *See Williams v. Hobbs*, 658 F.3d 842, 852 (8th Cir. 2011) (no access to courts violation occurs where prisoners "do not assert that they are physically unable to file an Eighth Amendment claim, only that they are unable to obtain the information needed to discover a potential Eighth Amendment violation").

Plaintiffs cannot meet federal pleadings requirements under Rule 8 and the First Amendment claims must be dismissed under Rule 12(b)(6), Fed. R. Civ. P.

## IV.  THE DUE PROCESS AND EQUAL PROTECTION CLAIMS STILL FAIL.[7]

Federal courts have squarely rejected Plaintiffs' remaining theories.  (Mot. at 15-17.) Again, federal courts prohibit death row inmates from recasting their Eighth Amendment claims as Equal Protection claims.  (*Id.*) (collecting citations).  Plaintiffs do not and cannot avoid this absolute bar by pointing to *Towery v. Brewer*, 672 F.3d 650, 659 (9th Cir. 2012), which Plaintiffs cite for the remarkable proposition that the Ninth Circuit, unlike all of its sister courts, permits prisoners to repackage their Eighth Amendment claims as desired or necessary.  (Opp. at 16.)  But the Ninth Circuit in *Towery* did not "decline" to adopt the uniform bar; rather, the court said it did not "need" to apply it where the claim failed on yet another basis.  *Id.* The Equal Protection claim must be dismissed on this basis alone; and the Court need not wade into "class-of-one" arguments or unsupported theories about how the State might violate Plaintiffs' Due Process and Equal Protection rights.[8]  *See id.* at 659–60 ("[T]he existence of discretion, standing alone, cannot be an Equal Protection violation. At the very least, there must be some respect in which the discretion is being exercised so that the complaining individual is being treated less favorably than others generally are.").

The Due Process claim likewise fails.  Plaintiffs again argue that the State Defendants' "absolute discretion" and past deviations from the Department Order 710 show the State has or will violate their due process rights to challenge their executions.  (Opp. at 14-15.)  In support of this dubious argument, Plaintiffs cite one dissent and three "dissentals," all in very different cases.  (*Id.*; Mot. at 15-16.)  But, of course, dissenting opinions are not binding precedent. *Ameline*, 409 F.3d at 1083 n. 5 ("Those dissents, of course, are not precedential.").  And, in any

---

[7] SAC, Claims Seven and Eight.

[8] Even under *Towery*'s analysis, Plaintiffs' allegations of past protocol deviations would not support a plausible equal protection claim because they have alleged no "actual pattern of treating prisoners differently in ways that did affect the risk of pain to which they would be subjected, and therefore the risk of being subjected to cruel and unusual punishment."  672 F.3d at 660 (emphasis in original); *see also Lopez v. Brewer*, 680 F.3d 1068, 1076 (9th Cir. 2012). (*See* Mot. at 11-13, 16-17.)

event, the State Defendants do not have "absolute discretion" to do whatever they want, whenever they want. *Supra* at 6 (citing Department Order 710).

## V. CONCLUSION.

Rule 12(b)(6) serves an important role, which is to ferret implausible lawsuits from federal dockets. This lawsuit falls squarely within that charge. The Court must dismiss the Second Amended Complaint in its entirety pursuant to Rule 12(b)(6), Fed. R. Civ. P., because Plaintiffs fail to state any plausible First Amendment, Eighth Amendment, Equal Protection, or Due Process claims.

DATED March 14, 2016.

OFFICE OF THE ARIZONA ATTORNEY GENERAL

/s/ David D. Weinzweig
David D. Weinzweig
Lacey Stover Gard
John Pressley Todd
Jeffrey L. Sparks
Attorneys for State Defendants

I hereby certify that the foregoing document
was electronically filed using the CM/ECF System
on March 14, 2016.

I further certify that a copy of the foregoing
was transmitted by a Notice of Electronic Filing
to the CM/ECF registrants on record in this
matter on March 14, 2016.

By: /s/ Liz Gallagher

4966863