JON M. SANDS
Federal Public Defender, District of Arizona
DALE A. BAICH (OH Bar No. 0025070)
dale_baich@fd.org
JESSICA FELKER (IL Bar No. 6296357)
jessica_felker@fd.org
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
602.382.2816 | 602.889.3960 facsimile

Counsel for Condemned Plaintiffs

MARK E. HADDAD (CA Bar No. 205945)
mhaddad@sidley.com
JOSHUA E. ANDERSON (CA Bar No. 211320)
janderson@sidley.com
ALYCIA A. DEGEN (CA Bar No. 211350)
adegen@sidley.com
KATHERINE A. ROBERTS (CA Bar No. 259486)
kate.roberts@sidley.com
COLLIN P. WEDEL (CA Bar No. 278461)
cwedel@sidley.com
MATT LIGHT (CA Bar No. 294007)
mlight@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
213.896.6000 | 213.896.6600 facsimile

Counsel for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| First Amendment Coalition of Arizona, Inc.; Charles Michael Hedlund; Graham S. Henry; David Gulbrandson; Robert Poyson; Todd Smith; Eldon Schurz; and Roger Scott, Plaintiffs, v. Charles L. Ryan, Director of ADC; James O'Neil, Warden, ASPC–Eyman; Greg Fizer, Warden, ASPC–Florence; and Does 1-10, Unknown ADC Personnel, in their official capacities as Agents of ADC, Defendants. | Case No. 2:14-cv-01447-NVW-JFM<br><br>**JOINT SUPPLEMENTAL CASE MANAGEMENT REPORT PURSUANT TO JUNE 30, 2016, ORDER** |

**SUPPLEMENTAL CASE MANAGEMENT REPORT**

Pursuant to the Court's June 30, 2016, Order (ECF No. 129), counsel for Plaintiffs[1] and Defendants[2] have conferred and hereby submit the following Joint Supplemental Case Management Report.

On July 29, 2016, Defendants filed a Motion to Dismiss Claim 1 for Lack of Subject Matter Jurisdiction (ECF No. 135) ("Motion"), contending that Plaintiffs' Eighth Amendment claim regarding Defendants' use of midazolam in lethal injections is no longer justiciable because ADC currently lacks midazolam and cannot obtain more of it.[3] As a result of that Motion, as discussed in further detail below, Plaintiffs seek to obtain evidence from Defendants via written and document discovery and deposition, currently limited in scope to the issues that are relevant to this Court's resolution of the Motion.

After meeting and conferring on August 12, 2016, the parties were able to identify areas of agreement and disagreement regarding discovery related to Defendants' Motion. The parties' areas of disagreement, as to which the parties seek the Court's resolution, are set forth below.

**1.    STATUS OF DISCOVERY RELATED TO DEFENDANTS' MOTION**

   **A.    Plaintiffs' Position**

      **1.    *Topics of Discovery***

Plaintiffs contend that the topics of discovery that are germane to and subject to discovery regarding Defendants' Motion—and, in particular, Defendants' argument that

---

[1] "Plaintiffs" refers to Charles Michael Hedlund, Graham Henry, David Gulbrandson, Robert Poyson, Todd Smith, Eldon Schurz and Roger Scott. The First Amendment Coalition of Arizona, Inc. ("Coalition") is also a Plaintiff in this case, but all of its claims were dismissed pursuant to this Court's May 18, 2016 Order. *See* ECF No. 117.

[2] "Defendants" are Charles L. Ryan, Director of the Arizona Department of Corrections ("ADC"), James O'Neil, Warden, Arizona State Prison Complex ("ASPC")–Eyman, and Greg Fizer, Warden, ASPC–Florence.

[3] Defendants have not moved to dismiss Plaintiffs' Claim 6 or Claim 7. Thus, even if this Court were to grant Defendants' Motion, this case would proceed.

"the State of Arizona has no midazolam and cannot obtain more"—include the following:

- ADC's potential sources of midazolam;
- ADC's efforts, since 2014, to obtain midazolam;
- ADC's communications with potential suppliers of midazolam, including communications with any entities that have declined to provide ADC with midazolam;
- ADC's communications with other U.S. States and/or state departments of corrections regarding midazolam;
- the factual bases for Defendants' assertions of privacy over the identities of potential suppliers of midazolam and of possible harm to potential suppliers of midazolam from disclosure of their identities to only Plaintiffs' counsel; and
- the factual bases for Defendants' assertions and sworn testimony that ADC cannot obtain midazolam.

These topics of discovery are tailored to Defendants' Motion, and represent a small subset of the discovery that Plaintiffs have previously sought in this action in connection with other issues.

### 2.   *Pertinent Discovery History*

Plaintiffs have sought to obtain discovery on the above topics (among others) since January 2016, but have had little success in obtaining ADC's full compliance. As is pertinent here, on January 26, 2016, Plaintiffs served their First Sets of Interrogatories and Requests for Production of Documents to Defendants ("Plaintiffs' Initial Discovery Requests"), which included a number requests aimed at obtaining the above information. *See* Appendix A.

Defendants did not respond until April 15, 2016. Those responses were deficient in many respects, including because of Defendants objections to providing unredacted communications with or about potential suppliers of execution chemicals. Plaintiffs and

Defendants met and conferred on June 13, 2016, and Defendants amended their responses and produced additional documents on July 8, 2016.

Those additional responses were again deficient as to several topics, including those that are centrally relevant to Defendants' justiciability contentions. On August 4, 2016, after reviewing the arguments raised in Defendants' Motion, Plaintiffs sent another meet-and-confer letter to Defendants, specifying in particular the outstanding discovery requests whose subject matter was directly relevant to Plaintiffs' opposition to Defendants' Motion. Given Defendants' apparent concern with preserving the confidentiality of a host of information, Plaintiffs also transmitted with their letter a proposed stipulated protective order that would govern the production of putatively confidential information in this action, and which included an attorneys'-eyes-only provision. A copy of that draft protective order is attached hereto as Appendix C.

On August 5, 2016, Plaintiffs served Defendants with additional discovery requests aimed narrowly at obtaining only evidence about the topics specified above ("Plaintiffs' August Discovery Requests"). These included interrogatories, requests for the production of documents, requests for admission, and notices of the deposition of Carson McWilliams (the sole declarant in support of Defendants' Motion) and the Rule 30(b)(6) deposition of ADC limited to topics related to ADC's possession of and efforts to obtain midazolam. *See* Appendix B.

### 3. *Areas of Agreement and Disagreement*

On August 12, 2016, the parties met and conferred regarding all outstanding discovery topics. Defendants agreed that they would amend certain of their responses to Plaintiffs' Initial Discovery Requests concerning the topics listed above (*viz.*, Hedlund Interrogatory Nos. 6-10, *see* Appendix A), by September 6, 2016. Defendants also agreed that Plaintiffs' August Discovery Requests sought information and documents that are relevant to the pending Motion, and agreed to provide responses to those requests also by September 6, 2016.

Defendants further agreed to make Mr. McWilliams available both in his individual capacity and as ADC's Rule 30(b)(6) witness for depositions limited to topics relevant to Defendants' Motion, with the understanding that Plaintiffs may later reopen those depositions, if necessary, as to other issues as the case progresses. Defendants advised, however, that they would object to and instruct not to answer any questions regarding the identities of ADC's potential suppliers of midazolam (as discussed further below). Consequently, the parties agreed to have the Court resolve their dispute about the topics appropriate for discovery before going forward with the deposition of Mr. McWilliams.

Despite the parties' basic agreement on the broader contours of discovery, the parties fundamentally disagree about Defendants' expansive views of: (a) what qualifies as "confidential" information under Ariz. Rev. Stat. § 13-757(C); and, for information that may so qualify (b) whether such purportedly "confidential" information may properly be entirely shielded from discovery.[4]

Defendants' positions on both topics are unsupportable. As to the scope of any purported confidentiality, Defendants have interpreted Ariz. Rev. Stat. § 13-757(C) to cover a range of information far beyond what the text of that statute actually encompasses. That statute purports to keep "confidential" only the "[t]he identity of executioners and other persons who participate or perform ancillary functions in an execution." Ariz. Rev. Stat. § 13-757(C). Quite simply, any manufacturer, drug supplier, pharmacist, or other person who *declines* to or does not provide execution chemicals to Arizona is *not* a "person[] who participate[d] or perform[ed] ancillary functions in an execution," and thus, information about such an entity or person would fall outside the ambit of the statute. ADC, however, is unwilling to concede even that basic limitation of the statute's scope—during the parties' August 12 meet-and-confer discussion, in fact, ADC refused to agree that its witnesses

---

[4] Section 13-757(C) provides that: "The identity of executioners and other persons who participate or perform ancillary functions in an execution and any information contained in records that would identify those persons is confidential and is not subject to disclosure pursuant to title 39, chapter 1, article 2."

4

would be allowed to respond if asked for the name of an entity that had unequivocally *declined* to supply drugs to ADC.

As to the consequences of certain information being "confidential" within the meaning of Section 13-757(C), moreover, ADC has taken the untenable position that "confidential" information is absolutely and entirely prohibited from disclosure under state law, no matter the circumstances. The most notable consequence of this position is that Defendants have refused to stipulate to Plaintiffs' proposed protective order (*see* Appendix C)—which includes "attorneys'-eyes-only" provisions—on the grounds that the sort of protection normally sufficient to govern the exchange of trade secrets and other highly confidential information is insufficient to address Defendants' confidentiality concerns here. Defendants have done so despite having entered into less-restrictive protective orders in similar lawsuits in the past. *See* Protective Order, *West v. Brewer*, Case No. CV-11-1409-NVW (Aug. 10, 2011) (ECF No. 36); Order, *Dickens v. Napolitano*, Case No. 07-1770-NVW (Sept. 8, 2008) (ECF No. 83).

Defendants' confidentiality contentions are contrary to the law, and to this Court's prior guidance. *See* June 29, 2016, Tr. at 27:1-5 ("I am quite aware of the prejudice to the State in having its sources or possible sources of drugs public, published. So I am confident that if you all cannot work it out, I will find ways to give adequate discovery that does not result in that great prejudice to the State."). "Confidentiality in and of itself is not a legitimate grounds of objection." *Collins v. NDOC*, No. 3:13-CV-00255-RCJ-WGC, 2014 WL 4656232, at* 3 (D. Nev. Sept. 17, 2014). That is true even if the purported confidentiality is rooted in a statute rather than in the common law. *See Pellerin v. Wagner*, No. 2:14-CV-02318 JWS, 2016 WL 950792, at *6 (D. Ariz. Mar. 14, 2016) (rejecting Arizona education department's objections to discovery pursuant to A.R.S. §§ 8-542 and 8-807, which state that a "person who receives DCS information shall maintain the confidentiality of the information," because the state agency "has not shown that its confidentiality concerns outweigh the need for the requested discovery," and ordering

5

production of information subject to a protective order). At a minimum, confidentiality issues must be balanced against the need for the discovery, *see, e.g.*, *id.*, and here, the need is vital: ADC seeks to dismiss one of Plaintiffs' claims on the basis of its unsupported assertion that it cannot obtain midazolam, despite the fact that it did so in the past, and that several other U.S. states possess midazolam and have obtained it from suppliers who likely could readily supply ADC if asked. Defending against ADC's contention will require testing the facts that support it, including by understanding the identities of the suppliers from which ADC has obtained or solicited midazolam, the terms of those purchases and requests, and the bases for their agreeing or refusing to supply midazolam to ADC.

ADC has not even attempted to engage in such a balancing, nor could its interests in confidentiality entirely trump Plaintiffs' need for this information. For one, ADC has, in the past, *publicly admitted* "procur[ing] midazolam from Akorn in 2014." *See* Michael Kiefer, *Manufacturer Asks DOC to Return Supplies of Drug Used in Lethal Injection*, ARIZ. REPUB., Apr. 21, 2015, *available at* http://www.azcentral.com/story/news/arizona/politics/2015/04/21/manufacturer-asks-doc-return-supplies-midazolam/26157867. And ADC's inability to satisfy any balancing is especially pronounced given its refusal to enter into a protective order, which fully address any confidentiality concerns. *See, e.g.*, *Soto v. City of Concord*, 162 F.R.D. 603, 614 (N.D. Cal. 1995) ("The use of a carefully drafted protective order, under which only Plaintiff and his lawyer have access to the material, substantially reduces the confidentiality interests asserted by Defendants."). At bottom, if Defendants persist in their refusal to divulge such purportedly "confidential" information, they should not be allowed to persist in their contentions about midazolam's unavailability. *See Rock River Comm'ns, Inc. v. Universal Music Grp.*, 730 F.3d 1060, 1069 (9th Cir. 2013) (a privilege "may not be used both as a sword and shield.").

### 4. *Timing for Plaintiffs' Opposition to Motion*

The parties have agreed that no deadline for filing Plaintiffs' Opposition to the Motion should be set until the Court resolves the parties' dispute about the scope and impact

of Section 13-757(C).

### B. Defendants' Position

#### 1. *Topics of Discovery*

Defendants generally agree with most of Plaintiffs' assertions regarding topics subject to discovery as related to Defendants' pending motion. However, Defendants disagree that "the factual bases for Defendants' assertions of privacy over the identities of potential suppliers of midazolam and of possible harm to potential suppliers of midazolam from disclosure of their identities to only Plaintiffs' counsel" are subject to discovery. The basis for Defendants' assertion of privacy is that A.R.S. § 13–757(C) mandates that they keep confidential "[t]he identity of executioners and other persons who participate or perform ancillary[5] functions in an execution and any information contained in records that would identify those persons." This mandatory confidentiality is statutory.

#### 2. *Pertinent Discovery History*

Defendants disagree with Plaintiffs' accusations and unfounded and repeated characterization of Defendants' discovery responses as "deficient." It bears repeating that, since the inception of this case, Defendants have voluntarily produced numerous relevant documents long before Plaintiffs issued formal discovery requests, including *all* documents and records surrounding Joseph Wood's execution, *all* documents which CGL reviewed in creating its report on Joseph Wood's execution, and ADC's October 2015 submission to the FDA. Over and above this completely voluntary production of documents, in the absence of any Rule 16 scheduling order, Defendants nonetheless agreed to respond to Plaintiffs' prior discovery requests. Finally, Plaintiffs' criticism that Defendants' prior discovery responses were "deficient" regarding topics "that are centrally relevant to Defendants' justiciability contentions" is misplaced since information relating to

---

[5] "Ancillary" means subordinate, subsidiary, auxiliary, or assisting. WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE 76 (Gramercy Books 1996).

7

Defendants' supply of and ability to acquire midazolam was not relevant to any issue in this case until the Court's subject matter jurisdiction over Claim 1 expired with ADC's supply of midazolam.

### 3. *Areas of Agreement and Disagreement*

Plaintiffs are correct that Defendants agreed to amend certain responses to Plaintiffs' Initial Discovery Requests as relevant to Defendants' pending motion and to respond to Plaintiffs' newly-propounded discovery requests by September 6, 2016, 30 days after Plaintiffs' served their most recent discovery requests on Defendants. (*See* ECF No. 136 (Notice of Service of Discovery, filed Aug. 5, 2016).) Plaintiffs also correctly state the parties' agreement surrounding Mr. McWilliams' deposition.

Regarding Plaintiffs' identified areas of disagreement, Defendants do not assert that the identity of a supplier who declines to and does not provide lethal injection chemicals to the State of Arizona, and who has never provided such chemicals to the state, is confidential under A.R.S. § 13–757(C). Clearly, a supplier who has never provided lethal injection chemicals to ADC and declines to provide them or does not provide them has neither participated nor performed any ancillary function in an execution. *See* A.R.S. § 13–757(C).

Next, Plaintiffs are correct that Defendants have not consented to violate A.R.S. § 13–757(C) by providing confidential information, whether under a protective order or otherwise. To use Plaintiffs' example, unlike a company with trade secrets, it is not Defendants' choice whether to provide the identities of those who participate in executions or perform ancillary functions—the Arizona Legislature made them confidential and did not give Defendants the authority to decide when that confidential information may be revealed.

Plaintiffs' reference to a 2015 news article in which an ADC spokesperson confirmed the Department had purchased midazolam from a particular supplier is immaterial to A.R.S. § 13–757(C)'s confidentiality requirement. There, the manufacturer

revealed its own identity by making public the fact that it would no longer provide drugs for use in lethal injection. *See* Michael Kiefer, *Manufacturer Asks DOC to Return Supplies of Drug Used in Lethal Injection*, ARIZ. REP. (April 21, 2015), available at http://www.azcentral.com/story/news/arizona/politics/2015/04/21/manufacturer-asks-doc-return-supplies-midazolam/26157867/. And the article makes clear that ADC acknowledged purchasing from that supplier only to correct misinformation spread by the supplier regarding the circumstances of the purchase. *See id.*

Plaintiffs appear to agree that when state law makes information confidential, "federal courts must balance the plaintiff[']s interest in disclosure against the state's legitimate concern [for] protecting the confidentiality of the requested information." *Bliss v. Putnam Valley Cent. Sch.*, 2008 WL 4355400, at *1 (S.D.N.Y. Sept. 22, 2008). Here, the United States Supreme Court explained just months ago why the State's concerns are legitimate and paramount. *Glossip v. Gross*, 135 S. Ct. 2726 (2015). The Court left nothing to the imagination: "[A]nti-death penalty advocates [have] pressured pharmaceutical companies to refuse to supply the drugs used to carry out death sentences," which had the effect of cutting off the supply of both sodium thiopental and pentobarbital (and now, midazolam) for use in executions. *Id*. at 2733–34. In this same vein, during oral argument Justice Alito referred to the existence of "what amounts to a guerilla war against the death penalty which consists of efforts to make it impossible for the States to obtain drugs that could be used to carry out capital punishment with little, if any, pain[.]" Transcript of Oral Argument at 14, Glossip v. Gross, 135 S. Ct. 2726 (2015) (No. 14–7955). This Court, too, acknowledged the "powerful interest here in not exposing the identity of people who cooperate with the executions, precisely so they will not be subject to the kind of pressure that the Court in *Glossip* had identified . . . ." (R.T. 4/7/16, at 42.) *See also* (R.T. 6/29/16, at 27) ("I am quite aware of the prejudice to the State in having its sources or possible sources of drugs public, published.").

Against these heightened concerns, Plaintiffs offer only generalities stating that they

9

must "test[] the facts" supporting Defendants' assertion that the midazolam supply for death penalty purposes has dried up. They offer no specific reason why they must know the identity of a supplier who has provided the State of Arizona with lethal injection drugs. Their unsupported contention that "several other U.S. states possess midazolam and have obtained it from suppliers who likely could readily supply ADC if asked" fails to explain why Plaintiffs have a compelling need to know ADC's lethal injection drug suppliers. Moreover, it is curious that Plaintiffs assert that midazolam is available to Defendants when their counsel has stated otherwise. *See* Liliana Segura, *Pfizer's Death Penalty Ban Highlights the Black Market in Execution Drugs*, THE INTERCEPT, May 19, 2016, available at https://theintercept.com/2016/05/19/pfizers-death-penalty-ban-highlights-the-black-market-in-execution-drugs/?comments=1#comments ("'The states can no longer obtain drugs from legitimate and legal sources.'"). In short, Plaintiffs have offered no compelling reason for disclosure of confidential information other than to say that they want it. Given the paramount need for confidentiality identified recently by both this Court and the United States Supreme Court, Defendants' refusal to violate state law by giving over confidential information is appropriate.

**4.** *Timing of Plaintiffs' Responsive Pleading*

Defendants agree with Plaintiffs that no deadline for Plaintiffs' opposition to Defendants' pending motion should be set at this time, but Defendants would request that the Court set a deadline a reasonable time from the completion of discovery on this issue.

Dated: August 19, 2016

SIDLEY AUSTIN LLP

s/ Joshua E. Anderson
*Counsel for Plaintiffs* First Amendment Coalition of Arizona, Inc.; Charles Michael Hedlund; Graham S. Henry; David Gulbrandson; Robert Poyson; Todd Smith; Eldon Schurz; and Roger Scott

1
2  Dated: August 19, 2016                          OFFICE OF THE ATTORNEY GENERAL
3
                                                   s/   Jeffrey L. Sparks
4                                                  *Counsel for Defendants* Charles L. Ryan,
                                                   Director of ADC; James O'Neil, Warden,
5                                                  ASPC–Eyman; and Greg Fizer, Warden,
                                                   ASPC–Florence
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Certificate of Service**

I hereby certify that on August 19, 2016, I electronically filed the foregoing Joint Supplemental Case Management Report Pursuant to June 30, 2016, Order with the Clerk's Office by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Haily Reichert
Assistant Paralegal
Capital Habeas Unit